**H.G. SLEDGE, INC. and Railroad Commission of Texas, Appellants,**

**v.**

**The PROSPECTIVE INVESTMENT AND TRADING COMPANY, LTD., Appellee.**

No. 03–99–00879–CV.

Court of Appeals of Texas, Austin.

Nov. 9, 2000.

H. Philip Whitworth, Scott, Douglass & McConnico, Austin, for Sledge.

Glenn E. Johnson, Hays, Johnson & Owens, L.L.P., Austin, for appellee.

Priscilla Hubenak, Asst. Atty. Gen., Austin, for Railroad.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and PATTERSON.

JAN P. PATTERSON, Justice.

The issue before us concerns the proper scope of the notice provision of the Railroad Commission's rule 37 related to well spacing. *See* 16 Tex.Admin.Code § 3.37(a)(2) (2000). This dispute arose when the Railroad Commission ("the Commission") denied a complaint filed by The Prospective Investment and Trading Company, Ltd. ("PITCO"), which challenged the validity of a drilling permit granted to H.G. Sledge, Inc. ("Sledge"). When Sledge filed its application for a drilling permit under a rule 37 exception with the Commission, Sledge did not notify PITCO, an overriding royalty holder on an adjacent tract. PITCO challenged the validity of Sledge's permit in a complaint, which the Commission denied. PITCO contested the Commission's denial by filing suit. The district court agreed with PITCO and set aside Sledge's drilling permit. The Commission and Sledge appeal the district court's judgment. We affirm in part and reverse in part the district court's judgment, rendering judgment that affirms the Commission's order, which held PITCO was not an "affected person" entitled to notice of the rule 37 exception application.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are undisputed. This matter involves two oil wells, Wells No. 8 and No. 10, situated on adjacent tracts of land, which are subject to the Holly and Holly B Leases respectively. PITCO's predecessor-in-interest entered into a farmout agreement[1] with Sledge's predecessor-in-interest and reserved a 5% overriding royalty interest[2] in Well No. 8. Currently, PITCO holds this 5% overriding royalty interest and Sledge has the working interest.[3] As a lessee under the Holly and Holly B Leases, Sledge is the designated operator of both adjoining tracts.

In 1998, Sledge submitted an application to the Commission to drill Well No. 10 on

---

1. A farmout agreement is a common form of agreement between operators in which a lessee agrees to assign its lease to another operator who is willing to drill. *Mengden v. Peninsula Prod. Co.*, 544 S.W.2d 643, 645 n. 1 (Tex.1976); *accord* 8 Howard R. Williams & Charles J. Meyers, *Oil & Gas Law* 376 (1999). "The primary characteristic of a farmout [agreement] is the obligation of the assignee to drill one or more wells" on the tract as a prerequisite to earning the interest in the lease. *Mengden*, 544 S.W.2d at 645 n. 1; 8 Williams & Meyers, *supra* 376.

2. "The term 'overriding royalty' has a well-defined meaning in Texas. It is an interest, which is carved out of, and constitutes a part of, the working interest created by an oil and gas lease." *In re GHR Energy Corp.*, 972 F.2d 96, 99 (5th Cir.1992) (quoting *Gruss v. Cummins*, 329 S.W.2d 496, 501 (Tex.Civ.App.—El Paso 1959, writ ref. n.r.e.)). This type of royalty is a fractional interest in the "gross production of oil and gas under a lease, in addition to the usual royalty paid to the lessor, free of any expense for exploration, drilling, development, operating, marketing, and other costs incident to the production and sale of oil and gas produced from the lease." 8 Williams & Meyers, *supra* note 1, 748. Although carved out of the working interest, an overriding royalty interest confers no right to drill, develop, or produce the oil and gas under the leased tract and thus is viewed as nonpossessory. *Id.* at 1191.

3. A working interest is an operating interest under an oil and gas lease that provides its owner with the exclusive right to drill, produce, and exploit the minerals. 8 Williams & Meyers, *supra* note 1, 1191. This interest bears all of the operating and drilling costs and is held subject to the payment of royalties. *Id.*

a tract covered by the Holly B Lease. This tract shares a lease line with the Holly Lease tract where Well No. 8 is situated. Because Well No. 10 was located closer to this line than the relevant field rules allow,[4] Sledge applied for a drilling permit under an exception to the Commission's rule 37. Rule 37 requires that all "affected persons" be given notice of applications filed under the rule and an opportunity for a hearing. 16 Tex.Admin.Code § 3.37(a)(2), (3). An applicant like Sledge, who seeks an exception to the spacing requirement, must provide a list of the mailing addresses of all "affected persons" who are entitled to receive notice of the request for an exception. *See id.* § 3.37(a)(2)(A). Sledge did not report PITCO's overriding royalty interest to the Commission and waived notice to itself as a designated operator. Without notifying PITCO, the Commission granted the drilling permit to Sledge. Sledge completed the drilling of Well No. 10 and commenced production.

After the Commission granted Sledge's permit, PITCO filed a complaint with the Commission requesting that the agency "initiate a show-cause proceeding requiring Sledge to show cause why its Holly B Well No. 10 should not be shut in pending a hearing ... and, upon such hearing, why the well should not be plugged and abandoned, having not been drilled pursuant to the rules and regulations of the Commission." The Commission did not place the complaint on its docket and, after finding no basis for a hearing, denied PITCO's request. PITCO filed a motion for rehearing with the Commission. PITCO's motion was overruled by operation of law. *See* Tex.Gov't Code Ann. § 2001.146(c) (West 2000).

---

**4.** This dispute occurs within the Amacker–Tippett, SW (Wolfcamp) Field, for which the Commission has adopted special field rules that require wells to be drilled at least 660 feet from the nearest property line, lease line, or subdivision line. *See* 16 Tex.Admin .Code § 3.37(d) (2000). Because Sledge planned to

Subsequently, PITCO filed suit against the Commission in Travis County district court. PITCO requested that the court revoke Sledge's permit due to insufficient notice and order that production from Well No. 10 be halted pending the outcome of the proceedings. As lessee of the adjacent tracts, Sledge intervened to defend the Commission's decision. The Commission contested the district court's jurisdiction over this case. The district court denied the Commission's plea to the jurisdiction. After a bench trial, the district court rendered judgment in favor of PITCO. The court's judgment reversed the Commission's grant of a drilling permit to Sledge for Well No. 10 and remanded the matter to the Commission to determine whether Sledge is entitled to a well permit at the current location. The Commission and Sledge appeal this final judgment. *See id.* § 51.012 (West 1997). We first address the threshold issue of whether the district court had jurisdiction to consider this case.

## DISCUSSION

### *Jurisdiction*

A challenge to subject-matter jurisdiction raises a question of law and therefore we review a district court's ruling *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). We consider the factual allegations made in good faith by the plaintiff to determine whether the district court properly exercised jurisdiction. *Brannon v. Pac. Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949). Unless the defendant pleads and proves that the plaintiff's allegations were made fraudulently to confer jurisdiction, we accept these allegations as true. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex.1996).

drill Well No. 10 approximately 300 feet from the nearest lease line, a rule 37 exception was required to authorize this drilling activity. Sledge actually drilled 450 feet from the lease line and obtained an amended permit for the revised well location.

Specifically, a plea to the jurisdiction contests the district court's authority to consider a cause of action. *Tsumi, Inc. v. Tex. Parks & Wildlife Dep't*, 23 S.W.3d 58, 60 (Tex.App.—Austin 2000, pet. filed) (citing *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 254 (Tex.App.—San Antonio 1999, pet. denied), and *State v. Benavides*, 772 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1989, writ denied)). The plaintiff bears the burden of alleging facts sufficient to demonstrate the district court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the district court must liberally construe the allegations in favor of jurisdiction. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex. 1989).

In its pleadings, PITCO asserts jurisdiction under section 85.241 of the Texas Natural Resources Code and invokes the procedures and standard of review in sections 2001.171 and 2001.174 of the Administrative Procedure Act ("APA"). The parties agree that the APA itself does not confer jurisdiction. The Commission acknowledges that in suits such as this one, jurisdiction may be available under section 85.241 of the Texas Natural Resources Code.

Section 85.241 of the Texas Natural Resources Code provides as follows:

Any interested person who is affected by the conservation laws of this state or orders of the commission relating to oil or gas and the waste of oil or gas, and who is dissatisfied with any of these laws or orders, may file suit against the commission or its members in a court of competent jurisdiction in Travis County to test the validity of the law or order.

Tex.Nat.Res.Code Ann. § 85.241 (West 1993). As a remedial statute, this section should be construed liberally. *Wrather v. Humble Oil & Ref. Co.*, 147 Tex. 144, 214 S.W.2d 112, 115 (1948); *City of San Antonio v. United Gas Pipe Line Co.*, 354 S.W.2d 217, 224 (Tex.Civ.App.—Austin 1962, no writ).

The Commission, however, argues that the letter ruling by the assistant director of the agency's oil and gas section is "not a Commission law or order as meant by section 85.241." According to its petition, PITCO's suit arises from the Commission's decision not to consider PITCO's complaint. The Commission denied PITCO's request for a show-cause hearing in a letter ruling, which stated that the assistant director was "closing ... [his] file on this matter." In a subsequent memorandum addressing PITCO's motion for rehearing, the assistant director recognized that this letter ruling presented a "hybrid" situation. The assistant director acknowledged that while no hearing was conducted and the letter ruling disclaimed that it was a final order of the Commission, the ruling was also "not a traditional staff interim ruling" because it "effectively dismissed PITCO's complaint and no further Commission action on the complaint was contemplated." The assistant director recommended that the Commission treat PITCO's submission as a motion for rehearing and deny the motion on its merits.

PITCO alleges in its petition that the motion for rehearing was overruled by operation of law. Appellants have not challenged PITCO's factual allegations as fraudulent. Consequently, we accept this allegation as true and, for purposes of this proceeding, conclude that a final order existed.

Relying on *Shell Petroleum v. Railroad Commission*, the Commission also argues that, as a matter of law, jurisdiction does not exist under this section because PITCO is not "affected." *See Shell Petroleum Corp. v. R.R. Comm'n*, 137 S.W.2d 797 (Tex.Civ.App.—Austin 1940, no writ). In *Shell Petroleum*, we noted, "Our examination of the many rule 37 opinions ... fails to disclose that it has ever been suggested that royalty owners are necessary *or even*

*proper* parties to an appeal from a Commission order granting or refusing a drilling permit." *Id.* at 798 (emphasis added). PITCO, however, does not contend that its suit is a direct appeal of the administrative decision to grant Sledge's permit; rather, PITCO's suit arises from the Commission's decision not to consider PITCO's complaint. Noting that the face of the petition does not affirmatively demonstrate a lack of jurisdiction and construing section 85.241 liberally, we sustain the district court's denial of the Commission's plea to the jurisdiction.

### Rule 37 Notice Provision

The question before us therefore is whether the notice provision of rule 37 requires the Commission to notify an overriding royalty interest holder when its lessee's interest extends to an adjacent tract for which the permit is sought, entitling the overriding royalty interest holder to a hearing. The Commission argues that the district court should not have employed a "substantial evidence" standard of review because this is not an appeal from a contested-case hearing. Rather, the Commission contends that the only valid posture of this case is as an original action in the district court. PITCO contends that the substantial evidence standard is appropriate because the Commission's response to PITCO's complaint constituted a final order. We agree.

▮▮▮▮ Final orders of the Commission are "deemed to be prima facie valid and subject to review under the substantial evidence rule." *Imperial Am. Res. Fund v. R.R. Comm'n,* 557 S.W.2d 280, 284 (Tex. 1977); *accord* Tex.Gov't Code Ann.

§ 2001.174; *R.R. Comm'n v. Pend Oreille Oil & Gas Co.,* 817 S.W.2d 36, 40–41 (Tex. 1991). We review the Commission's legal conclusions for errors of law and its findings of fact for support by substantial evidence. Tex.Gov't Code Ann. § 2001.174 (West 2000);[5] *Heat Energy Advanced Tech., Inc. v. W. Dallas Coalition,* 962 S.W.2d 288, 294–95 (Tex.App.—Austin 1998, pet. denied). Under this standard of review, the proper test is whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion that the agency must have reached to justify the disputed action. *Tex. State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988); *Heat Energy Advanced Tech., Inc.,* 962 S.W.2d at 295. The issue is whether the agency "acted arbitrarily and without regard to the facts." *Auto Convoy Co. v. R.R. Comm'n,* 507 S.W.2d 718, 722 (Tex. 1974).

▮▮▮▮ We may not substitute our judgment for that of the state agency "on questions committed to agency discretion. . . ." Tex.Gov't Code Ann. § 2001.174; *accord Sizemore,* 759 S.W.2d at 116. The appealing party bears the burden of showing a lack of substantial evidence. *Tex. Health Facilities Comm'n v. Charter Med.—Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). The evidence in the record may actually weigh by a preponderance against the agency's decision, yet satisfy the substantial evidence standard. *Id.; Lewis v. Metro. Sav. & Loan Ass'n,* 550 S.W.2d 11, 13 (Tex.1977).

At the heart of this notice dispute is PITCO's desire to challenge the Commis-

---

5. Section 2001.174(2) requires a court to reverse or remand a case for further proceedings:

    if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are

    (A) in violation of a constitutional or statutory provision;

    (B) in excess of the agency's statutory authority;

    (C) made through unlawful procedure;

    (D) affected by other error of law;

    (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

    (F) arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174(2) (West 2000).

sion's decision to grant Sledge a drilling permit. PITCO maintains that the permit is invalid due to insufficient notice, asserting that the Commission must hear from all "affected parties" before it can properly determine if waste will occur. PITCO claims Well No. 10 is unnecessary and that no one else was available to present this information to the Commission. We turn to the notice provision of rule 37 to determine if it required the Commission to notify PITCO of Sledge's permit application.

We construe administrative rules according to the same traditional principles as statutes. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999); *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex.1976). We strive to give effect to an agency's intent. *Rodriguez*, 997 S.W.2d at 254; *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997). We must follow the plain language of a rule unless it is ambiguous. *Rodriguez*, 997 S.W.2d at 254; *Republicbank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985).

The notice provision, rule 37(a)(2)(A), sets forth the persons to whom notice must be given when the applicant seeks an exception to minimum lease-line spacing and reads as follows:

A. When an exception to only the minimum lease-line spacing requirement is desired, the applicant shall file a list of the mailing addresses of all affected persons, who, for tracts closer to the well than the greater of one-half of the prescribed minimum between-well spacing distance or the minimum lease-line spacing distance, include:

(i) the designated operator;

(ii) all lessees of record for tracts that have no designated operator; and

(iii) all owners of record of unleased mineral interests.

16 Tex.Admin.Code § 3.37(a)(2)(A) (2000). PITCO acknowledges that it does not fall within any of the specified categories of interests presumed to be entitled to notice.

PITCO, however, asserts that rule 37(a)(2)(A) does not establish an exclusive list of interests entitled to notice. We agree. The Commission's use of the word "include" in the provision signifies that the list is not exclusive. Tex.Gov't Code Ann. § 311.005(13) (West 1998).[6] In addition, in the preamble to its rule 37 amendment in 1997, the Commission recognized the need for a non-exclusive list. 22 Tex. Reg. 8973, 8973 (1997). The question then is what interests are encompassed beyond the enumerated list in the provision by the language "affected persons." Appellants[7] argue that, by its terms, the notice provision of rule 37 does not require the Commission to notify royalty interest owners. Appellants contend that PITCO is not an "affected person" because its overriding royalty interest is nonpossessory. PITCO asserts that the distinction between possessory and nonpossessory interests is irrelevant because nonpossessory interests, such as those held by royalty owners, retain their character as property interests. PITCO also complains that the distinction is unreasonable because the Commission notifies other interest owners without the right to drill, such as lessees who are not operators, mineral owners, and surface owners under other Commission rules.

We reject PITCO's argument that the Commission notifies other interest owners without the right to drill. Mineral owners and lessees, as possessory interests, have a

---

**6.** Subsection (13) reads as follows: " 'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Tex.Gov't Code Ann. § 311.005(13) (West 1998).

**7.** Because the positions of Sledge and the Commission do not diverge, when appropriate we will refer to them collectively as "appellants."

right to develop their mineral resources. *Stephens County v. Mid–Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S.W. 290, 292 (1923). Given the unique purpose of rule 37—to designate well locations for mineral production—we refrain from broadening the scope of our review to consider other notice provisions within the Commission's rules.

The parties agree that the three categories of interests specified in the rule 37 notice provision are comprised of possessory interest owners. 16 Tex.Admin.Code § 3.37(a)(2)(A). Royalty and overriding interests have no possessory right or interest in a tract. *Standard Oil Co. v. Marshall*, 265 F.2d 46, 54 (5th Cir.1959) (addressing the nature of overriding royalty interests). We find, however, that the provision contains no language restricting the phrase "affected persons" to possessory interest owners. Because the rule is not clear and unambiguous on its face, we look beyond its language to the Commission's interpretation of rule 37 and the rule's history to determine what interests are encompassed by the phrase "affected persons."

■■■■ Courts must defer to an agency's interpretation of its own regulations unless the interpretation is plainly erroneous or inconsistent with the language of the rule. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Rodriguez,* 997 S.W.2d at 254. "[T]he agency interpretation becomes a part of the rule itself and represents the view of a regulatory body that must deal with the practicalities of administering the rule." *McMillan v. Tex. Natural Res. Conservation Comm'n,* 983 S.W.2d 359, 362 (Tex.App.—Austin 1998, pet. denied). The supreme court has recognized, "[A court] cannot strike down an administrative order on the ground that the evidence heard by the [c]ourt indicated that a more equitable one could be entered. That procedure would be destructive of uniformity

of administration." *R.R. Comm'n v. Mackhank Petroleum Co.,* 144 Tex. 393, 190 S.W.2d 802, 804 (1945).

■■■ The Commission has statutory jurisdiction over oil and gas wells in Texas. Tex.Nat.Res.Code Ann. § 81.051(a)(2) (West 1993). The question of proper well location is "one vested peculiarly in the Commission as an administrative body, and one which cannot be exercised by the courts." *Stewart v. Humble Oil & Ref. Co.,* 377 S.W.2d 830, 833 (Tex.1964); *accord* Tex.Nat.Res.Code Ann. § 81.051(a)(2); *cf. Mackhank Petroleum Co.,* 190 S.W.2d at 804 ("[The court] has not been clothed with the power or the facilities for making such a determination" in its review of a lower court's decision to strike a Commission order establishing a well's level of production).

Appellants argue that the longstanding policy of the Commission has never required the agency to notify royalty owners of rule 37 applications. *See Shell Petroleum Corp.,* 137 S.W.2d at 798; *Rabbit Creek Oil Co. v. Shell Petroleum Corp.,* 66 S.W.2d 737, 739–40 (Tex.Civ.App.—Austin 1933, no writ). Rule 37 was promulgated by the Commission in 1919 [8] and since then has governed the spacing of oil and gas wells across the state. When the Commission initially incorporated the phrase "affected persons" into rule 37 in 1990, three categories of interests presumed to be "affected," identical to those in the current rule, were enumerated in the rule's notice provision. 15 Tex. Reg. 2634 (1990) (adopted), *amended by* 22 Tex. Reg. 8973, 8973 (1997). In the preamble to its 1990 rule amendment, the Commission stated that it sought to clarify the provision's language rather than change the substance of the provision. *Id.* In the preamble to its rule 37 amendment in 1997, the Commission expressly stated that the notice provision is inapplicable to royalty owners or nonoperating mineral interest owners.

---

**8.** Tex.R.R.Comm'n, Rule 37 (1919) (since amended); *see also Brown v. Humble Oil &* *Ref. Co.,* 126 Tex. 296, 83 S.W.2d 935, 939–41 (1935).

22 Tex. Reg. 8973, 8973 (1997). The Commission reasoned that these interests are considered "by virtue of their contracts or leases, to be represented by the designated operator of the tract." *Id.*

Appellants urge that our opinions in *Shell Petroleum v. Railroad Commission* and *Rabbit Creek Oil v. Shell Petroleum* support their reasoning. In *Shell Petroleum* this court considered whether royalty owners were necessary or proper parties to a suit to contest a drilling permit. *Shell Petroleum Corp.,* 137 S.W.2d at 798. In acknowledging that before the Commission a lessee also represented the royalty interests in the tract for which a permit was sought, we stated:

> In the drilling and spacing of wells the lessee represents the royalty owners in so far as they may have any interest therein. They were so represented in the making of the applications for the permits and in all proceedings thereunder before the Commission; to which proceedings they were not made parties and in which they did not participate other than by such representation.

*Id.*

In *Rabbit Creek Oil,* this Court addressed whether adjacent landowners and lessees were entitled to notice under rule 37 and determined that only the adjacent lessees must be notified. *Rabbit Creek Oil Co.,* 66 S.W.2d at 739–40. We held that "as a practical proposition notice to the adjacent lessees in most cases should be and is sufficient." *Id.* at 740. We explained:

> The rule deals with the practical matter of giving notice to the party most vitally interested in the drilling of a well as an exception to the rule.... [The] interest [of adjacent lessees] also requires them to procure all the oil possible under their leases, and the lessees' interest in the oil is greater than that of the owner of fee,

who usually receives only one-eighth of the oil as royalty.

*Id.* at 739–40.

PITCO asserts that the supreme court's decision in *HECI Exploration Co. v. Neel* contradicts appellants' contention that a lessee represents royalty interest owners before the Commission. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881 (Tex. 1998). PITCO maintains the court held that there is no representational duty or obligation by a lessee to its royalty owners. In *HECI,* the court reviewed a suit by royalty owners against their lessee alleging that their oil and gas lease contained an implied covenant obligating the lessee to notify the royalty interest owners "(1) of the need to sue an operator on an adjoining lease for damage to the common reservoir, and (2) that the lessee intends to sue." *Id.* at 883. The court concluded that the statute of limitations barred the royalty owners' first claim. *Id.* at 888. Reasoning that "such a duty is not necessary to effectuate the full purpose of the lease and is not so clearly within the contemplation of the parties that they deemed it unnecessary to express it,"[9] the court held that no implied covenant requires a lessee to notify a royalty owner of its intent to sue an adjoining operator. *Id.* at 890–91. In reaching this conclusion, the court acknowledged that "a lessee has no inherent right to sue on behalf of the royalty owners." *Id.* at 890.

Unlike this case, the dispute in *HECI* arose from the lessor-lessee relationship and the respective duties that each party owed to the other under their oil and gas lease. Here, the suit originates from the Commission's dismissal of PITCO's complaint regarding the validity of Sledge's drilling permit. We conclude that the ruling in *HECI* has no bearing on this case and reject PITCO's argument.

PITCO contends that *Shell Petroleum* and *Rabbit Creek Oil* are distinguishable from this case because the lessees and the

9. *HECI Exploration Co.,* 982 S.W.2d at 883.

royalty interest owners in those cases shared a common interest. PITCO alleges that an inherent conflict of interest exists between Sledge and itself as an overriding royalty interest due to Sledge's position as a common lessee of the Holly and Holly B Leases. Furthermore, PITCO urges that the Commission need only extend notice to royalty interest holders who have a conflict of interest with their lessees. PITCO's solution, however, requires the Commission to discern whether such conflicts of interest exist. In effect, PITCO asks the Commission to exceed the scope of its authority. *See Magnolia Petroleum Co. v. R.R. Comm'n,* 141 Tex. 96, 170 S.W.2d 189, 191 (1943) (recognizing that the Commission has no authority or jurisdiction to "adjudicate questions of title or rights of possession").

Appellants point out that PITCO's overriding royalty interest was created by the farmout agreement between PITCO's predecessor-in-interest and Sledge's predecessor-in-interest. As a result, appellants argue that PITCO's proper remedy should result from the terms of that agreement. We agree.

Texas law recognizes that the instrument in which an overriding royalty is reserved dictates the obligations of the lessee to the royalty owner; the relationship established by the instrument is contractual in nature. *Sunac Petroleum Corp. v. Parkes,* 416 S.W.2d 798, 804–05 (Tex.1967). Unless an assignment, such as a farmout agreement, provides otherwise, the assignee of the oil and gas lease impliedly covenants to protect the premises against drainage when the assignor reserves an overriding royalty. *Bolton v. Coats,* 533 S.W.2d 914, 916 (Tex.1976). A lessee who fails to act as a reasonably prudent operator when drainage occurs violates the implied covenant to protect the

leasehold. *HECI Exploration Co.,* 982 S.W.2d at 887 (citing *Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 568 (Tex. 1981)).

Here, the farmout agreement reserved an overriding royalty interest, which PITCO presently holds. PITCO asserts no additional interest with respect to Well No. 8. PITCO argues that Sledge's ability to drill Well No. 10 affects its interest in Well No. 8 and, as a result, it is entitled to notice under rule 37. PITCO seeks damages for the injury to its interest resulting from the Commission's grant of the drilling permit to Sledge for Well No. 10. We note that under the farmout agreement, PITCO may seek damages to remedy any injury to its overriding royalty interest.[10] We conclude that the Commission's interpretation of "affected persons" is not plainly erroneous or inconsistent with the rule's language and defer to that interpretation.

The Commission reviewed PITCO's complaint that the drilling permit was invalid because PITCO had not received notice of Sledge's rule 37 application. Sledge's rule 37 application contained a plat showing that Sledge was the operator for all tracts adjacent to the Holly B Lease, the location of Well No. 10. Sledge asserted that the rule 37 exception was necessary to drill an offset well to protect the interests under the Holly B Lease. As evidenced by the letter ruling, the Commission denied the complaint after determining that as its own offset, Sledge had satisfied the notice provision.

As permitted by the provision, Sledge waived notice to itself as the designated operator of these tracts. 16 Tex.Admin.Code § 3.37(a)(2)(A)(i) (2000). In doing so, Sledge invoked rule 37(h)(2), which authorizes the director of the Oil and Gas Division of the Commission to grant a

---

**10.** The Commission also acknowledges that PITCO may have a civil action against Sledge based on (1) the farmout agreement creating the overriding royalty interest, (2) a duty of fair dealing, or (3) both grounds. Williams & Meyers, *supra* note 1, § 420.2, at 365. The

Texas Natural Resources Code provides jurisdiction for suits for damages. Tex.Nat.Res. Code Ann. § 85.321 (West 1993). We render no opinion on the suggestion as this issue is not before us.

requested spacing exception without holding a hearing, if written waivers of objection are received from all persons to whom notice would be given under rule 37(a)(2). *Id.* § 3.37(h)(2). We determine that the Commission could have reasonably concluded that Sledge's waivers of notice satisfied the requirements of rule 37(h)(2) and granted Sledge a drilling permit for Well No. 10. Moreover, we hold that substantial evidence supported the Commission's decision to deny PITCO's complaint and that PITCO was not entitled to notice of Sledge's application under rule 37.

### Due Process

PITCO further challenges the constitutionality of rule 37. In particular, PITCO claims that because the Commission failed to provide it with proper notice of Sledge's rule 37 application, the agency violated PITCO's due process rights under the United States and Texas Constitutions. U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. PITCO asserts an undisputed property right, namely, its overriding royalty interest in Well No. 8.

In *Rabbit Creek Oil,* this court considered whether the failure of rule 37 to require notice to fee owners of adjacent lands, while providing notice to adjacent lessees, rendered the notice provision of rule 37 unconstitutional. *Rabbit Creek Oil Co. .,* 66 S.W.2d at 739–40. We concluded that "rule 37 is not unconstitutional because it failed to provide for notice to adjacent landowners." *Id.* at 739. PITCO emphasizes that it is a "party at interest to a particular application" with respect to Sledge's application and as such, our decision in *Rabbit Creek Oil* recognizes PITCO's right to notice under rule 37. *See id.* Having concluded that PITCO is not an "affected person" entitled to notice, we reject PITCO's constitutional arguments regarding rule 37. We sustain appellants' first issue.

### CONCLUSION

We conclude that the district court properly exercised jurisdiction and we af-firm the court's judgment to the extent that it denies the Commission's plea to the jurisdiction. We also conclude that substantial evidence supported the Commission's decision to deny PITCO's complaint. Accordingly, we reverse that part of the judgment of the district court and render judgment that the Commission correctly determined that PITCO was not an "affected person" entitled to notice of the rule 37 exception application filed by Sledge for Well No. 10 on the Holly B Lease.