TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00466-CV






Charles Anthony (Tony) Smith, Appellant


v.


Jose Montemayor, Commissioner of Insurance, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. 99-07222, HONORABLE PAUL DAVIS, JUDGE PRESIDING





 

M E M O R A N D U M O P I N I O N


 Appellant Charles Anthony Smith applied for a local recording agent's license with
the Commissioner of Insurance. Following an administrative hearing, the administrative law judge
recommended granting the license, but the Commissioner disagreed and signed an order denying
Smith's application. Smith sought judicial review in the district court, which affirmed the
Commissioner's decision. In this appeal, Smith primarily challenges the Commissioner's
consideration of two prior felony convictions in assessing Smith's fitness for licensure and argues
that the Commissioner's order is not supported by substantial evidence. We overrule Smith's issues
and affirm the district court's judgment and the Commissioner's order.

BACKGROUND

 Smith filed an application with the Texas Department of Insurance (the Department)
for a local recording agent's license. The Department staff denied the application, and Smith
requested a hearing. On December 14, 1998, a hearing was held before an administrative law judge
with the State Office of Administrative Hearings. The Department's staff recommended denial of
Smith's application based on Smith's two felony theft convictions in 1974 and his failure to
complete court-ordered restitution. The convictions stemmed from Smith's role as president of
Vehicle Warranty Corporation, an entity that sold service contracts relating to motor vehicles. The
theft involved the sale of an unauthorized insurance product that defrauded at least 56 elderly victims
of more than $37,000. Smith was sentenced to five years' imprisonment for one conviction and ten
years' probation for the other. The trial court also found that Smith "along with others, has taken
part in numerous other similar and related offenses in which the elderly victims have been unlawfully
and criminally deprived of their money." Consequently, the court ordered Smith to pay $15,000 in
restitution to 56 listed individuals and families. (1) Smith was released from custody in 1977. 
Evidence offered during the hearing demonstrated that Smith has paid only $1,326 in restitution. 
Smith testified that a motion to revoke his probation for failure to pay restitution was filed, but was
unsuccessful. Smith further stated that his only other criminal convictions were for traffic tickets
and a first offense for driving while intoxicated. 

 Smith also testified that he is currently in the real estate business and in the bail
bonding business. He applied for the local recording agent's license to expand his bail bonding
business; he said he does not intend to enter the general insurance business. 

 After the hearing, the ALJ filed a proposal for decision in which he recommended
granting Smith's application for an agent's license. The ALJ reasoned that although Smith's theft
convictions relate directly to the fiduciary duties and responsibilities of an insurance licensee, the
25 years that have elapsed since the convictions and Smith's gainful employment since being
released from prison outweighed the seriousness of his criminal activity. The ALJ relied on the
factors set forth in article 6252-13c, section 4(c) of the revised civil statutes in reaching his decision. (2) 
See Tex. Occ. Code Ann. §§ 53.022, .023 (West 2003). The ALJ further noted that although Smith's
failure to pay the full amount of the court-ordered restitution is a serious matter, the prosecutor's
unsuccessful attempt to revoke Smith's probation based on his failure to pay restitution rendered the
fulfillment of the restitution requirement "somewhat ambiguous." The ALJ found that the negative
implications of Smith's failure to pay restitution are "outweighed by the remoteness of the entire
episode and [Smith's] long-standing and successful return to society." In sum, the ALJ found Smith
to be presently fit to be licensed as a local recording agent. The ALJ submitted proposed findings
of fact and conclusions of law, along with the proposal for decision that the license be granted.

 The Commissioner rejected the proposal for decision and denied Smith's application
for an agent's license. In his order, he modified two of the ALJ's proposed findings of fact and two
proposed conclusions of law, reasoning that the ALJ had misinterpreted the applicable law. Smith
filed a motion for rehearing, which was overruled by operation of law. 

 Smith appealed the Commissioner's decision to the district court. Following a
hearing, the district court concluded that the Commissioner properly exercised his statutory authority
in modifying the ALJ's proposed findings of fact and conclusions of law and in concluding that
Smith's prior convictions related to his present fitness for licensure. The court therefore affirmed
the Commissioner's order.

 By six issues, Smith appeals from the district court's judgment affirming the
Commissioner's order.


DISCUSSION

Substantial Evidence Review

 The Commissioner's decision is subject to review under the substantial evidence rule. 
See Tex. Gov't Code Ann. § 2001.174 (West 2000). (3) Under this rule, the reviewing court presumes
that the Commissioner's order is supported by substantial evidence, and the appealing party has the
burden of overcoming this presumption. See Sportscoach Corp. of Am. v. Eastex Camper Sales, Inc.,
31 S.W.3d 730, 733 (Tex. App.--Austin 2000, no pet.). The court reviews the Commissioner's legal
conclusions for errors of law and his findings of fact for support by substantial evidence. H.G.
Sledge, Inc. v. Prospective Inv. & Trading Co., 36 S.W.3d 597, 602 (Tex. App.--Austin 2000, pet.
denied). The Commissioner's findings are reviewed to determine whether the evidence in its entirety
is sufficient that reasonable minds could have reached the conclusion that the Commissioner must
have reached to justify his decision. Id. (citing Texas State Bd. of Dental Exam'rs v. Sizemore, 759
S.W.2d 114, 116 (Tex. 1988)). The court may not substitute its judgment for that of the
Commissioner as to the weight of the evidence. Locklear v. Texas Dep't of Ins., 30 S.W.3d 595, 597
(Tex. App.--Austin 2000, no pet.) (citing Mireles v. Texas Dep't of Pub. Safety, 9 S.W.3d 128, 131
(Tex. 1999); Public Util. Comm'n v. Gulf States Util. Co., 809 S.W.2d 201, 211 (Tex. 1991)). The
evidence in the record may actually preponderate against the Commissioner's decision, yet satisfy
the substantial evidence standard. H.G. Sledge, 36 S.W.3d at 602. The true test is not whether the
Commissioner reached the correct conclusion but "whether some reasonable basis exists in the
record for the action taken by the [Commissioner]." State v. Public Util. Comm'n, 883 S.W.2d 190,
204 (Tex. 1994); accord Meier Infiniti Co. v. Motor Vehicle Bd., 918 S.W.2d 95, 98 (Tex.
App.--Austin 1996, writ denied). Finally, the Commissioner's decision should be reversed only if
the party challenging the decision demonstrates that the absence of substantial evidence has
prejudiced the party's substantial rights. Locklear, 30 S.W.3d at 597.


 Consideration of Criminal Convictions

 As a preliminary matter, Smith argues that the Commissioner erred in considering his
1974 criminal convictions in evaluating his present fitness for licensure; he claims the convictions
were too remote to be considered. The Commissioner may disqualify a person from receiving a
license on the grounds that the person has been convicted of a felony that directly relates to the duties
and responsibilities of the licensed occupation. Tex. Occ. Code Ann. § 53.021 (West 2003). The
legislature has provided a number of factors that the Commissioner must consider in determining
whether a criminal conviction directly relates to the licensed occupation:


 (1) the nature and seriousness of the crime;



 the relationship of the crime to the purposes for requiring a license to engage in
the occupation;

 the extent to which a license might offer an opportunity to engage in further
criminal activity of the same type as that in which the person previously had
been involved; and

 the relationship of the crime to the ability, capacity, or fitness required to
perform the duties and discharge the responsibilities of the licensed occupation.




Id. § 53.022. In addition to these, the legislature has listed several factors for determining the fitness
of a person who has been convicted of a crime to perform the duties and discharge the
responsibilities of the licensed occupation:



 the extent and nature of the person's past criminal activity;

 the age of the person when the crime was committed;

 the amount of time that has elapsed since the person's last criminal activity;

 the conduct and work activity of the person before and after the criminal
activity;

 evidence of the person's rehabilitation or rehabilitative effort while incarcerated
or after release; and

 other evidence of the person's fitness, including letters of recommendation . . . .




Id. § 53.023(a). The statute specifies from whom the letters of recommendation should be provided: 



 prosecutors and law enforcement and correctional officers who prosecuted,
arrested, or had custodial responsibility for the person;




 the sheriff or chief of police in the community where the person resides; and

 any other person in contact with the convicted person.




Id. § 53.023(a)(6). The person seeking the license has the responsibility, to the extent possible, to
obtain and provide to the Commissioner the letters of recommendation from prosecutors, law
enforcement, and correctional officers, as required by section 53.023(a)(6)(A). Id. § 53.023(b). In
addition to providing the letters of recommendation, the license applicant must furnish proof in the
form required by the Commissioner that he has:



 maintained a record of steady employment;

 supported the applicant's dependents;

 maintained a record of good conduct; and

 paid all outstanding court costs, supervision fees, fines, and restitution ordered
in any criminal case in which the applicant has been convicted.




Id. § 53.023(c).


 The legislature has also directed licensing agencies to issue guidelines relating to their
practices; the guidelines must state the reasons a particular crime is considered to relate to a
particular license. Id. § 53.025 (West 2003). Accordingly, the Department has developed guidelines
for determining the consequences of a criminal conviction in relation to the granting of a license to
sell insurance. See 28 Tex. Admin. Code §§ 1.501-.502 (2003); Locklear, 30 S.W.3d at 598. The
guidelines specify that crimes involving moral turpitude, such as fraud, dishonesty, and the
mishandling of funds, are considered of prime importance in determining fitness for licensure by the
Department. Id. § 1.502(a). The reason these particular crimes relate to insurance licenses is that
the special nature of the relationship between insurance-related entities and the public, coupled with
the varied nature of insurance and insurance-related products, requires that licensees be honest,
trustworthy, and reliable. Id. § 1.502(a)(1). The Department's rules include the exact same factors
listed in sections 53.022 and 53.023 of the occupations code, which apply to applicants who have
been convicted of felonies involving moral turpitude. See id. § 1.502(b). The rules specify that the
Department will not issue a license to an applicant who has been convicted of a felony involving
moral turpitude unless the Commissioner first finds that the factors listed in sections 53.022 and
53.023 of the code and in the Department's rules outweigh the serious nature of the felony
conviction when viewed in light of the occupation being licensed. Id. § 1.502(a)(3)(C).

 The Department's rules include one additional factor not found in chapter 53 of the
occupations code. The rule provides that although any felony or misdemeanor may be considered
by the Department in determining whether to grant a license, a conviction that is too remote, or for
some other reason does not constitute probative evidence, will not be considered. Id. § 1.502(c). 
Relying on this rule, Smith argues that his criminal convictions were too remote as a matter of law
to constitute probative evidence, and the Department thus failed to comply with its own rule by
considering Smith's felony convictions in determining whether to issue him a license. 

 Whether the Department failed to follow its own rules presents a question of law. 
BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group, 93 S.W.3d 570, 575 (Tex. App.--Austin
2002, pet. filed) (citing Sonic Drive-In v. Hernandez, 797 S.W.2d 254, 255 (Tex. App.--Corpus
Christi 1990, writ denied)). Generally, we construe agency rules, which have the same force and
effect as statutes, in the same manner as statutes, striving to give effect to the agency's intent and
following the plain language of the rule unless it is ambiguous. Id. (citing Rodriguez v. Service
Lloyds Ins. Co., 997 S.W.2d 248, 254 (Tex. 1999); H.G. Sledge, 36 S.W.3d at 603). If the rule is
vague or ambiguous, however, we will defer to the agency's interpretation unless it is plainly
erroneous or inconsistent with the language of the rule. Id. (citing H.G. Sledge, 36 S.W.3d at 604). 
"Because it represents the view of the regulatory body that drafted and administers the rule, the
agency interpretation actually becomes a part of the rule itself." Id. at 575-76 (citing McMillan v.
Texas Natural Res. Conservation Comm'n, 983 S.W.2d 359, 362 (Tex. App.--Austin 1998, pet.
denied)). If the agency fails to follow the clear, unambiguous language of its own regulation, we
reverse its action as arbitrary and capricious. Rodriguez, 997 S.W.2d at 255.

 Generally, the rules addressing the effect of criminal conduct on license applicants
were promulgated to implement chapter 53 of the occupations code. 28 Tex. Admin. Code § 1.501. 
The rules do not define what is considered "too remote." The Commissioner's position is that a 25-year-old conviction that is directly related to the occupation for which an applicant seeks a license
is not too remote to be considered during the licensing process. Smith counters that before the
Commissioner can determine whether the conviction directly relates to the licensed occupation, he
must first determine whether the conviction is too old; he insists that a 25-year-old conviction is too
old as a matter of law. In light of the Department's expressed intent of ensuring that licensees are
trustworthy and reliable, we cannot say that the Commissioner's consideration of two 25-year-old
convictions that involved the defrauding of elderly victims through the sale of an unauthorized
insurance product amounts to an erroneous interpretation of the Department's rules or is inconsistent
with the plain language of the rules. We refuse to construe the Department's rules to bar
consideration of Smith's prior convictions as a matter of law.

 Smith relies on an attorney general's opinion in support of his contention that any 25-year-old conviction is too remote to be considered by the Department in assessing his fitness for
licensure. See Op. Tex. Att'y Gen. No. H-441 (1974). Although entitled to due consideration,
attorney-general opinions are not binding on courts. City of Fort Worth v. Cornyn, 86 S.W.3d 320,
328 (Tex. App.--Austin 2002, no pet.). Furthermore, the opinion to which Smith cites is a 1974
opinion addressing a county bail bond board's authority to consider convictions in issuing licenses;
the applicable statute was silent as to what effect a conviction should have on the board's licensing
decision. Thus, the opinion is factually and legally distinguishable from the case before us and is
not controlling. (4) Accordingly, we hold that the Department was not bound by the attorney general's
opinion in interpreting its own rules and determining whether these particular felony convictions
were too remote to be considered. We overrule Smith's second issue.


 Substantial Evidence

 Having determined that Smith's felony convictions constitute probative evidence of
his present fitness for licensure, we may consider the convictions in determining whether substantial
evidence exists in the record to support the Commissioner's decision. The Commissioner found that
Smith was twice convicted of felony theft relating to his activity as president of Vehicle Warranty
Corporation; the corporation sold unauthorized insurance products and defrauded 56 elderly victims
of over $37,000. As a result of his convictions, Smith was ordered to make partial restitution of
$15,000 among the 56 victims. The Commissioner acknowledged in his findings that in the 25 years
that have elapsed since Smith committed the theft, Smith has engaged in no other criminal activity
other than a first-offense arrest for driving while intoxicated. Although Smith has shown some
evidence of rehabilitation, as evidenced by his successful business ventures, he paid only $1,302 of
the $15,000 in court-ordered restitution to his elderly victims. The Commissioner also noted that
Smith had not provided other evidence of present fitness, such as the specific letters of
recommendation required under the statute and rules.

 Smith claims that the Commissioner's determination that Smith failed to pay
restitution is not supported by substantial evidence. For support, he cites the ALJ's proposal for
decision, in which the ALJ explained that because a motion to revoke Smith's probation based on
his failure to make restitution was unsuccessful, the exact status of the restitution requirement is
"somewhat ambiguous."

 During the administrative hearing, Smith did not dispute that he had been convicted
of theft in 1974 and ordered to pay restitution. He also testified that he did not recall how much of
the restitution he had paid. The Department's staff attorney, however, introduced an exhibit
evidencing that Smith had paid only $1,302.56. When asked if he had anything to disprove that
amount, Smith responded: "I don't have anything to offer either way." Smith further testified as to
his understanding of the restitution order: each of the several individuals that were involved in the
theft were to make restitution as well, and their payments would apply as a credit to the $15,000
Smith was ordered to pay. (5) He was to begin making payments six months after he was released from
incarceration. He explained, however, that he simply did not have the money to make the payments. 
He further stated that he did not know whether anyone else made the payments; "[t]here may still
be money owed," admitted Smith. Smith blamed "the state" for keeping him incarcerated so long
that he was prevented from "doing what [he] could have done," i.e., make full restitution. He felt
he had "paid more than or as much as [he] need[ed] to pay."

 With regard to the motion to revoke probation, Smith testified that towards the end
of his probation, a motion to revoke was filed, but was unsuccessful. No exhibits reflecting the basis
for the motion or the reason it was denied were introduced into evidence. See Tex. Occ. Code Ann.
§ 53.023(c) (applicant's responsibility to furnish proof of payment of all outstanding restitution); 28
Tex. Admin. Code § 1.502(b)(3) (same). Our review of the record reveals that substantial evidence
exists demonstrating that Smith failed to make restitution as ordered by the court. Smith himself
testified that "[t]here may still be money owed," suggesting that he did not pay it all and does not
know that anyone else did. 

 Smith also challenges the Commissoner's finding that he failed to provide evidence
of fitness, such as letters of recommendation. See Tex. Occ. Code Ann. § 53.023(b) (applicant's
responsibility to furnish letters of recommendation); 28 Tex. Admin. Code § 1.502(b)(3) (same). 
According to Smith, he provided several letters of recommendation and submitted them to the
Department's staff in response to staff inquiries. Smith, however, did not introduce copies of these
letters as evidence at the administrative hearing; and if he was unable to obtain them (as he argues
on appeal), he did not explain that to the ALJ. The Department's rules and the relevant statute
plainly place the responsibility of providing these letters on the license applicant. Tex. Occ. Code
Ann. § 53.023(b); 28 Tex. Admin. Code § 1.502(b)(3). We thus conclude that substantial evidence
supports the Commissioner's finding that Smith failed to provide letters of recommendation. In sum,
because there is ample evidence in the record to support the Commissioner's decision, we overrule
Smith's sixth issue.



 Changes to Findings and Conclusions

 By his fifth issue, Smith argues that the Commissioner's changes to the ALJ's
findings of fact and conclusions of law were not made in compliance with the Administrative
Procedure Act. The Commissioner changed the ALJ's findings and conclusions based on section
2001.058(e)(1) of the government code, which provides: 



 A state agency may change a finding of fact or conclusion of law made by the
administrative law judge, . . . only if the agency determines: 

 
 that the administrative law judge did not properly apply or interpret
applicable law, agency rules, written policies provided under Subchapter
(c), or prior administrative decisions . . . . 

 


 The agency shall state in writing the specific reason and legal basis for a change
made under this subsection.



Tex. Gov't Code Ann. § 2001.058(e)(1) (West 2000). Smith does not specify to which of the
modifications to the ALJ's proposed findings of fact and conclusions of law he objects. It appears
from his argument that he objects to the Commissioner's finding that Smith is not fit for licensure (6)
and to the related conclusions that Smith "is not presently fit for licensure as his criminal convictions
were for serious crimes of moral turpitude and related directly to the duties and responsibilities of
an insurance agent" and "the Commissioner should not grant [Smith's] application." (7)

 Smith argues that the Commissioner should not have considered his 1974 convictions
in determining Smith's fitness for licensure because the ALJ determined that the convictions were
too remote. Smith appears to construe the ALJ's finding that Smith is presently fit for licensure as
an implicit finding that his convictions were too remote to be considered. It is apparent from the
ALJ's proposal for decision, however, that the ALJ did consider Smith's convictions. Indeed, the
ALJ weighed the seriousness of the convictions, their relation to the licensed occupation, evidence
of rehabilitative efforts, and the amount of time that had elapsed since Smith was convicted of the
crimes, which he was required to do pursuant to both chapter 53 and the Department's rules, and
concluded that the passage of time mitigated in favor of granting Smith a license. Thus, the
Commissioner did not modify any of the ALJ's findings or conclusions as they relate to whether
Smith's convictions were too remote to be considered. 

 In changing the ALJ's finding and conclusions that Smith was presently fit for
licensure, the Commissioner explained that


 the ALJ failed to properly apply and interpret that rule [1.502] as well as the statute
on which it is based, by giving the greatest weight to the mere passage of time and
the Applicant's business successes since the criminal activity, rather than to highly
relevant evidence regarding the seriousness of the conduct and the harm to the
segment of the public victimized by the conduct. 



In his order, the Commissioner recounted many of the findings that the ALJ made in his proposal
for decision. For example, the ALJ characterized the nature of Smith's criminal activities as "serious
crimes of moral turpitude which relate directly to the duties and responsibilities of an insurance
agent." In addition, the ALJ stated in his proposal for decision that the crimes for which Smith was
convicted were "extremely serious and related directly to the sale of a product which was found to
constitute the unlicensed practice of insurance," that "numerous elderly persons were defrauded,"
and Smith "does not appear to have ever accepted complete responsibility for his earlier criminal
activity, and expressed no remorse regarding his prior criminal activity."

 The Commissioner noted that special rules apply to applicants convicted of crimes
involving moral turpitude and that "evidence surrounding such crimes and any alleged rehabilitation
is of prime importance in determining present fitness." The Commissioner further pointed out that
although the uncontroverted evidence demonstrated that Smith had been engaged in gainful
employment since his release from prison and that he has had no further criminal convictions except
for misdemeanor DWIs, it is also uncontroverted that Smith failed to pay all outstanding restitution. 
The Commissioner viewed this failure to make restitution as strong evidence bearing on Smith's lack
of rehabilitation following his release from prison. 

 The Commissioner ultimately concluded that while passage of time since the criminal
convictions and subsequent work activity bear some relevance to present fitness for licensure, "they
cannot form the sole basis for a decision to license an individual where the individual has not used
such intervening time and business success to pay court-ordered restitution to victims of theft." The
Commissioner thus concluded that Smith's failure to pay restitution without explanation or
mitigating factors outweighed his subsequent gainful employment. Moreover, the Commissioner
determined that the ALJ failed to properly weigh the factors listed in chapter 53 and in the
Department's rules. 

 None of the Commissioner's modifications that Smith finds objectionable involved
adjudicative facts, that is, facts that require weighing the evidence and making credibility
determinations. (8) See Flores v. Employees Ret. Sys., 74 S.W.3d 532, 540 (Tex. App.--Austin 2002,
pet. denied). Rather, the modifications reflect the Commissioner's interpretation of the Department's
rules and applicable statutes. An agency enjoys complete discretion in modifying an ALJ's findings
and conclusions when those findings and conclusions reflect a lack of understanding or
misapplication of the existing laws, rules, or policies. See F. Scott McCown & Monica Leo, When
Can an Agency Change the Findings or Conclusions of an Administrative Law Judge?, 50 Baylor
L. Rev. 65, 86 (1998). Furthermore, the Commissioner fully complied with the statutory requirement
that he specify the reason and legal basis for the changes made to the ALJ's findings. We hold that
the Commissioner did not abuse his discretion in modifying the ALJ's findings and conclusions and
overrule Smith's fifth issue.


Other Evidence

 By his third and fourth issues, Smith complains that the district court violated section
2001.175(2)(e) of the government code by failing to limit his review to the agency record. 
Specifically, Smith argues that the district court considered a DWI conviction and two lawsuits that
were not part of the agency record, and that the court relied on an opinion, Brown v. Texas
Department of Insurance, 34 S.W.3d 683 (Tex. App.--Austin 2000, no pet.), that was not issued
until after the administrative hearing had concluded and was thus outside the administrative record. 
In the Commissioner's supplemental brief filed with the district court, the Commissioner directed
the court to two recent opinions by the Fort Worth court of appeals involving Smith's applications
for bail bond licenses. The Commissioner relied on the opinions as support for his argument that
it was appropriate to consider Smith's 1992 felony driving while intoxicated conviction, in
conjunction with his 1974 convictions, in determining whether to grant Smith a license. (9) The
Commissioner attached these two opinions to the supplemental brief.

 We reject Smith's argument for several reasons. First, Smith testified during the
administrative hearing that he had been in trouble for driving while intoxicated since the 1974
convictions. Thus, the reference to a DWI conviction was not outside the administrative record. 
Furthermore, the Fort Worth court of appeals' opinions were not introduced into evidence. Rather,
they were cited as authority for the proposition that Smith's DWI conviction can be considered in
determining whether to grant a license application. Legal arguments and authority are not evidence. 
Finally, in its order, the district court found that the Commissioner properly exercised his authority
when he made changes to the ALJ's findings of fact and conclusions of law and that the
Commissioner properly concluded that Smith's prior convictions (for felony theft) related to his
fitness for licensure. Based on the resolution of these issues, the court affirmed the Commissioner's
order. There is no indication that the district court even considered Smith's DWI conviction in
reaching his decision. 


 Similarly, the Brown opinion was cited as legal authority, not introduced as evidence. 
Legal authority need not be made a part of the administrative record to be considered by the
reviewing court. Furthermore, it is of no consequence that the opinion was issued after the
administrative hearing had concluded. The opinion discusses the same statutes that applied to
Smith's case. A reviewing court may consider any legal authority pertinent to the case. The district
court did not err in relying on the Brown opinion to interpret and analyze the relevant statutes and
rules. (10) We overrule Smith's third and fourth issues.


District Court Delay

 By his first issue, Smith alleges that the district court violated section 74.059 of the
government code and consequently violated Smith's substantial rights. Smith specifically complains
of the district court's prolonged delay in rendering judgment.

 According to the record in this case, Smith filed an original petition with the district
court on May 23, 2000. The district court held a hearing and admitted the administrative record into
evidence on July 7, 2000. Following the presentation of oral arguments, the court took the matter
under advisement. The docket sheet reflects that on June 21, 2001, the district court placed the case
on its dismissal docket on its own motion. Smith filed a motion to retain on July 26, explaining that
he had not intentionally delayed the case. The district court did not dismiss the case. On February
28, 2002, the district court rendered its final judgment.

 Section 74.059(c)(2) of the government code states: "A district . . . court judge shall:
. . . rule on a case within 90 days after the case is taken under advisement . . . ." Tex. Gov't Code
Ann. § 74.059(c)(2) (West 1998). The statute does not provide, and Smith does not contend, that
failure to comply with the statute is automatically reversible error. Rather, Smith argues that the
district court's delay in rendering judgment reflects the court's "obvious bias." Further, Smith
contends that the court's failure to promptly render judgment and the court's setting the case on the
dismissal docket caused Smith unnecessary expenses in filing a motion to retain and unnecessary
delay in filing an appeal or in reapplying for licensure. He concludes that his substantial rights were
violated by the court's delay in rendering judgment.

 Smith bears the burden of demonstrating that the district court's delay in rendering
judgment probably caused the rendition of an improper judgment. See Tex. R. App. P. 44.1(a)(1);
see also Lloyd's of London v. Walker, 716 S.W.2d 99, 101-02 (Tex. App.--Dallas 1986, writ ref'd
n.r.e.); Bryant v. Bruner, 593 S.W.2d 358, 362 (Tex. Civ. App.--Texarkana 1979, no writ). This
he has failed to do. Smith points to nothing in the record evidencing the district court's "obvious
bias," other than the court's delay. Smith has provided no evidence indicating that the district court
intentionally delayed rendering judgment in this case in an attempt to treat Smith more harshly than
other litigants. At no time while the decision was pending did Smith take any action to inquire about
the case's progress. There is nothing in the record indicating what may have caused the district
court's delay. Moreover, Smith's filing of a motion to retain in order to avoid dismissal and his
inability to immediately appeal the denial of his licensure or reapply for a license does not amount
to the type of injury that mandates the automatic reversal of the district court's judgment. 
Accordingly, we hold that if the district court's delay in rendering judgment can be considered error,
Smith has failed to show that it is reversible error, and we overrule his first issue.


CONCLUSION

 Having overruled all of Smith's issues on appeal, we affirm the district court's
judgment, which affirmed the Commissioner's order denying Smith's application for a local
recording agent's license.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: June 19, 2003
1. The sentencing order included an attachment listing 56 individuals who were the victims
of Smith's criminal conduct. The total amount owed to all of the victims was $37,138. Smith was
ordered to pay only $15,000 of that total.
2. See Act of May 19, 1981, 67th Leg., R.S., ch. 267, § 1, 1981 Tex. Gen. Laws 694, 694. 
This statute was codified. See Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen.
Laws 1431, 1447. For convenience, we will cite to the current occupations code sections.
3. The reviewing court may reverse the Commissioner's determination only if the appellant's
substantive rights have been prejudiced because the Commissioner's "findings, inferences,
conclusions, or decisions" are: 



 in violation of a constitutional or statutory provision; 
 in excess of the agency's statutory authority; 
 made through unlawful procedure; 
 affected by other error of law; 



 not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or 
 arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion. 




Tex. Gov't Code Ann. § 2001.174(2) (West 2000). Each of these grounds for reversal presents a
question of law, which we review de novo. See Texas Dep't of Transp. v. Jones Bros. Dirt & Paving
Contractors, 24 S.W.3d 893, 898 (Tex. App.--Austin 2000), rev'd on other grounds, 92 S.W.3d 477
(Tex. 2002). 
4. We note that contrary to Smith's interpretation of the opinion, the attorney general stated
that a 20-year-old conviction that is specifically related to the characteristics required of license
applicants and is accompanied by evidence of lack of reformation may not be too remote to be
considered by a county bail bond board in determining whether to issue a license. Op. Tex. Att'y
Gen. No. H-441.
5. The sentencing order provides that Smith "shall be given credit for any restitution made
by others, provided all victims . . . have first been paid in full."
6. The Commissioner's sixth finding of fact states:


 The Applicant is presently not fit for licensure as a Local Recording Agent. This
finding is based on the following factors:



 
 The Applicant was discharged from prison in 1977 after completion of the
sentencing for one conviction of a serious crime, felony theft.

 


 b. Twenty-five years have lapsed since the Applicant engaged in criminal activity
other than first offense arrests for driving while intoxicated.



 The Applicant has shown some evidence of rehabilitation by engaging
successfully in real estate and bail bonding businesses subsequent to his
release from prison; however, Applicant has paid only $1,302.56 of the court-ordered $15,000 in restitution to 56 identified elderly victims, and has further
failed to provide other evidence of fitness including letters of recommendation,
as provided by TEX. REV. CIV. STAT. ANN. art. 6252-13c and 28 TEX.
ADMIN. CODE Sec. 1.502.



The italicized portions reflect language that was not in the ALJ's proposed finding of fact, but was
added by the Commissioner.
7. The ALJ's fifth proposed conclusion of law provided: "Based on the factors discussed in
Finding of Fact No. 6, the Applicant is presently fit for licensure despite the fact his criminal
convictions were for serious crimes of moral turpitude and related directly to the duties and
responsibilities of an insurance agent." His sixth proposed conclusion stated that "the Commissioner
should grant the application of Charles Anthony Smith for a Local Recording Agent's license."
8. While the Commissioner added language to proposed finding of fact number six reflecting
that Smith failed to pay all court-ordered restitution and failed to provide letters of recommendation,
this information is included elsewhere in the ALJ's proposal for decision and is not a modification
of the ALJ's adjudicative fact findings. 
9. The ALJ's proposal for decision and the Commissioner's order indicate that the only other
criminal activity in which Smith engaged is "first offense arrests for driving while intoxicated." The
two opinions out of the Fort Worth court of appeals, however, indicate that Smith had a 1992 felony
DWI conviction and a 1994 felony DWI conviction. See Smith v. Tarrant County Bail Bond Bd.,
997 S.W.2d 870 (Tex. App.--Fort Worth 1999, writ denied); Smith v. Wise County Bail Bond Bd.,
995 S.W.2d 881 (Tex. App.--Fort Worth 1999, writ denied). While it is possible that the two
opinions are referring to the same felony conviction, one felony DWI conviction nevertheless
suggests that Smith has had more than mere "first offense arrests for driving while intoxicated."
10. We also disagree with Smith's interpretation of Brown and his assertion that the district
court misconstrued the opinion. That opinion concerned the Commissioner's revocation of an
insurance agent's license after the Commissioner learned that Brown failed to disclose on his
application all of the offenses for which he had been charged or convicted. Brown, 34 S.W.3d at
686. The district court affirmed the revocation, as did this Court. Id. at 686, 692. 


 Smith contends that Brown does not apply to his case because the only basis for the
revocation of Brown's license was his failure to include the convictions on his license application;
the convictions themselves were not the reason for the revocation. We disagree. In the opinion, this
Court expressly acknowledged that Brown's license could have been revoked solely on the basis of
his past convictions, without regard to the omissions in his application. Id. at 688, 689 n.12. This
Court then went on to discuss the evidence as it related to each of the factors listed in sections 53.022
and 53.023 of the code and in the rules. Id. at 690-91. Thus, contrary to Smith's interpretation, the
opinion indeed discusses the relationship between past criminal convictions and a licensee's
responsibilities and is thus relevant to this case.