# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00793-CV

**BMW of North America, LLC, Appellant**

**v.**

**Motor Vehicle Board and Motor Vehicle Division of the Texas Department
of Transportation; and Autobahn Imports, Inc., d/b/a
Autobahn Motorcars, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY,126TH JUDICIAL DISTRICT
### NO. GN1-03785, HONORABLE MARGARET COOPER, JUDGE PRESIDING

## O P I N I O N

Responding to a complaint brought by Autobahn Imports, Inc. ("Autobahn") against

BMW of North America, LLC ("BMW"), the Motor Vehicle Board ("the Board") determined, based

on evidence and testimony presented during a contested-case proceeding, that the BMW "X5" SUV[1]

("the X5") should be considered a passenger car, rather than a truck, for purposes of administering

Autobahn's franchise agreement with BMW. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36), §§ 3.01,

---

[1] BMW designed and marketed the X5 as an "SAV," or "Sport Activity Vehicle."
Throughout these proceedings, the Board and all parties have referred to the X5 as an "SUV," or
"Sport Utility Vehicle." We will refer to the X5 as an SUV for purposes of this opinion.

3.08, 5.02(b) (West Supp. 2003) ("the Motor Vehicle Code"); *see also* Tex. Gov't Code Ann. §§ 2001.051-.178 (West 2000) ("the APA"). The district court affirmed the Board's determination. Raising various constitutional and procedural arguments, BMW now appeals, arguing that the Board's contested-case determination is incorrect as a matter of law. We will affirm the district court's decision.

**BACKGROUND**

*SUV: The Origin of Species*

The record reflects that, when the Board began regulating franchise-dealerships under the motor vehicle code in 1971, SUVs did not exist as a vehicle type. Initially, SUVs had characteristics resembling a light truck. In essence, the earliest SUVs consisted of an enclosed vehicle set on a truck chassis. However, based on consumer feedback, vehicle manufacturers began to create new vehicles that incorporated the smaller size and passenger comfort of traditional passenger cars with the cargo capacity and chassis height of the original SUVs. As a result, it is not possible to classify each specific SUV model as either a passenger car or a light truck; each is truly a hybrid vehicle. Although a particular vehicle might have a cargo capacity comparable to that of the average light truck, its size, passenger-comfort features, and marketing might make it more akin to a passenger car for the Board's regulatory purposes. Therefore, to categorize a specific SUV, the Board is faced not with the question of whether a particular SUV is a light truck or a passenger car, but rather with the question of whether this particular vehicle, given its specific make-up and marketing, is *more like* a light truck or *more like* a passenger car for the regulatory question at hand.

2

*The Franchise-Agreement Dispute*

Autobahn is a franchise dealership selling and marketing BMW-brand automobiles in the Texas market. Autobahn has a franchise contract to sell BMW passenger cars.[2] When BMW began marketing the X5, it asked its passenger-car dealers to sign new agreements to sell "light trucks" in order to be able to sell the new vehicle. The record suggests that the opportunity to sell the X5 was extremely attractive to the various dealers. BMW took the position that, because it had, as the distributor, decided to classify the X5 as a light truck, dealerships such as Autobahn could not sell and market the X5 under Texas law without signing a new franchise agreement. Because the agreement also required the dealerships to take on extra obligations not included in their original passenger-car contracts, Autobahn protested to the Board, contending that BMW was violating motor vehicle code section 5.02(b)(26), which requires manufacturers to offer all dealers of the same "line-make" all models included in that line-make. Motor Vehicle Code § 5.02(b)(26).

Among its other duties, the Board regulates franchise automobile dealers and manufacturers on the basis of "line-make."[3] Franchise dealers obtain separate licenses for each dealership location, and have certain rights regarding the establishment of another dealer of the same vehicle line-make within the same county or a fifteen-mile radius. Motor Vehicle Code § 4.06(d).

---

[2] Until the time of this dispute, BMW had only entered into franchise contracts providing for the sale of passenger cars or motorcycles.

[3] The Texas Department of Transportation comprises both the Motor Vehicle Board and its staff, the Motor Vehicle Division. The Division consists of three substantive sections, the Licensing Section, which processes and issues licenses and includes the staff of administrative law judges, the Enforcement Section, which brings original enforcement proceedings, and the Consumer Affairs Section, which administers the Texas Lemon Law and determines administrative cases under that statute. The Enforcement Section has intervened in this proceeding.

3

In general, a line-make is the class of vehicle (passenger cars, light trucks, medium trucks, heavy trucks, or motorcycles) sold by a manufacturer under a particular brand name (*e.g.*, BMW, Mercedes, or Lexis). There is no specific statutory definition of the term "line-make," and the Board determines whether a vehicle fits into a given line-make based on a fact-intensive inquiry. The Board has full jurisdiction and all necessary and implied powers to make any determination regarding its statutory obligation to regulate the distribution, sale, and leasing of motor vehicles as governed by the motor vehicle code. Motor Vehicle Code § 3.01(a).

BMW took the position that the Board had established a practice of categorizing all SUVs as light trucks. Therefore, BMW concluded that the Board, under its established practice, was required to categorize the X5 as a light truck and force Autobahn to sign the new franchise agreement in order to market the new vehicle. Autobahn, in response, took the position that, because SUVs are a relatively new vehicle type, there is no set custom or practice and an SUV's line-make must be determined on a case-by-case basis. BMW and Autobahn presented their positions to an administrative law judge over a five-day evidentiary hearing. The evidence included descriptions of the X5's mechanical characteristics as compared to similar vehicles, explanation of the Board's practices and rationales for making line-make determinations, and testimony that, according to the department of transportation's vehicle titles and registration division, SUVs may be registered under *either* a passenger car or a truck license, at the owner's option, because they are "evolving" vehicles whose design does not fit neatly into an established category. The administrative law judge issued a proposal for decision recommending that the Board find in BMW's favor. After hearing argument, the Board disagreed and rejected the proposal for decision and its proposed findings and conclusions.

The Board determined that the X5 fits more into the passenger-car category and that BMW should have offered the X5 to Autobahn under its existing franchise contract. This determination was based on, among other considerations, the uses for which the X5 was advertised and marketed; the branding; the corporate personnel involved in its management, manufacturing, and marketing; the fact that the X5 was to be sold only by the existing passenger-car dealer network; and the fact that according to the licensing division it is an "optional" vehicle category that can be licensed to a driver either as a passenger car or as a truck. The Board declined to impose any fine or penalty against BMW.

Having unsuccessfully pursued a suit for judicial review of the Board's decision in the district court, BMW now appeals to this Court, arguing that the Board made three legal errors in reaching its conclusions, by: (1) treating the X5 differently from what BMW claimed was a similar Mercedes Benz vehicle, (2) improperly considering and construing provisions of the transportation code, and (3) providing an unfair determination process that violated constitutional protection against arbitrary and capricious decision-making.[4]

## DISCUSSION

Because contested-case hearings before the Board are heard under the APA without a specified standard of review, the substantial evidence rule applies. Motor Vehicle Code § 3.08(a); *see* Tex. Gov't Code Ann. § 2001.174; *see also Seagull Energy E&P v. Railroad Comm'n*, 99

---

[4] BMW also argues that the Board improperly considered some evidence and testimony without allowing rebuttal. Although BMW has given us the record cites for these alleged errors, it has cited no legal authority for its contentions. We will not address this issue. *See* Tex. R. App. P. 33.8(h).

5

S.W.3d 232, 243 (Tex. App.—Austin 2002, pet. filed). We review the Commission's legal conclusions for errors of law[5] and its findings of fact for support by substantial evidence. Tex. Gov't Code Ann. 2001.174; *H.G. Sledge v. Prospective Inv. & Trading*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied). The evidentiary test is whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988); *Heat Energy Advanced Tech., Inc. v. West Dallas Coalition*, 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied). Our review ensures that an agency does not act arbitrarily or without regard to the facts. Tex. Gov't Code Ann. § 2001.174(f); *see Auto Convoy Co. v. Railroad Comm'n*, 507 S.W.2d 718, 722 (Tex. 1974). Administrative error will not be grounds for reversal or remand unless the appellant's substantive rights have been prejudiced. Tex. Gov't Code Ann. § 2001.174(2); *see H.G. Sledge*, 36 S.W.3d at 602.

BMW does not argue that the Board's decision was not based on substantial evidence. Nor does BMW contest that the Board has full authority to administer its own licensing provisions. Instead, based on the circumstances of the Board's decision, BMW argues that the Board's actions rise to an error of law.

First, BMW argues that the X5 was treated differently from similarly situated SUV models which have been treated by the Board and other dealers as "light trucks." A licensing

---

[5] A court shall reverse or remand a case for further proceedings if the administrative findings are: in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by error of law, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174 (West 2000).

6

authority acts arbitrarily and unlawfully if it treats similarly situated applicants differently without an articulated justification. *City of Austin v. Deats*, 32 S.W.2d 685, 687 (Tex. Civ. App.—Austin 1930, no writ); *see also City of Austin v. Nelson*, 45 S.W.2d 692, 696 (Tex. Civ. App.—Austin 1931, no writ). The United States Constitution also protects similarly situated regulated persons from arbitrary legal distinctions, *see Reynolds v. Sims*, 377 U.S. 533, 565 (1964), as well as from the unequal application of facially equitable laws. *See Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)). BMW argues that it has received disparate treatment compared to a similar vehicle distributed by Mercedes Benz, which is treated by the Board as a "light truck." BMW contends that the Board cannot now declare the X5 to be a "passenger car." BMW asserts that the two vehicles compete directly with each other, and that the X5 is "a truck like the Mercedes in terms of size, design, appearance, and motor size." In each case, BMW takes the position that the Board has treated it unfairly by making an unsupported distinction between the X5 and similar vehicles.

The Board responds that the record does not support BMW's allegations of unequal treatment. The Board points out that, although BMW only references Mercedes Benz as a comparable distributor with a similar product, other manufacturers produce and distribute similar vehicles that are categorized by the industry as passenger cars, rather than light trucks. As a general matter, the Board takes the position that it has never made a line-make determination covering all SUVs. Specifically, the Board's records reveal that no complaint has been filed regarding the decision to categorize the Mercedes SUV as a light truck, and there has been no contested-case proceeding regarding the Mercedes. In effect, the Board has never made a formal decision on this

7

question. Furthermore, although BMW relies heavily on the statement that the X5 is a truck "like" the Mercedes in size, design, appearance, and motor size, the record contains only that single statement. The Board argues that the record further indicates that the X5 competes with other SUVs considered to be passenger cars, but does not indicate that the X5 and the comparable Mercedes Benz vehicle are mechanically identical. Absent a stronger showing that the X5 is identical to its Mercedes Benz counterpart, the Board concludes, there is inadequate basis in this record to find an equal protection violation.

Having reviewed the record, we agree with the Board that there is insufficient evidence of similarity between the X5 and the Mercedes Benz vehicle to substantiate an unequal treatment claim. Although there is some evidence that the two vehicles are similar, other evidence presented during the five-day contested-case hearing suggests that the two vehicles should be characterized differently. In its order stating that the X5 should be considered a passenger car, the Board relies on many factors, including the marketing and mechanical similarities between the X5 and other similar passenger-type SUVs in reaching its conclusion. Given that the Board has only been called upon to designate one other SUV, the Mercedes, as having a particular line-make, and the record reveals at least some substantive differences between the two vehicles which support the Board's decision, we cannot say that the Board afforded BMW disparate treatment in making its determination.

BMW next contends that the board created a completely new, arbitrary legal standard by referencing section 502.001 of the transportation code, which establishes license-plate standards, in a decision regarding motor vehicle distribution and sales, which are governed by the motor vehicle

8

code. According to BMW, the Board's decision constitutes a significant change in policy that is inappropriate absent a change in the controlling statutory authority. *See Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex. 1967); *see also Bullock v. Marathon Oil Co.*, 798 S.W.2d 353, 357-58 (Tex. App.—Austin 1990, no writ). BMW contends that the Board's determination violates the traditional understanding of the term line-make because it fails to distinguish between two lines of vehicles, passenger cars and light trucks. Because the Board referenced section 502.001 in making this decision, BMW concludes that the Board impermissibly relied upon an inappropriate statutory standard in abandoning its long-standing policy.

Section 502.001 states that:

(2) "Commercial motor vehicle" means a motor vehicle, other than a motorcycle, designed or used primarily to transport property. The term includes a passenger car reconstructed and used primarily for delivery purposes. The term does not include a passenger car used to deliver the United States mail

. . . .

(9) "Light truck" means a commercial motor vehicle that has a manufacturer's rated carrying capacity of one ton or less.

. . . .

(17) "Passenger car" means a motor vehicle, other than a motorcycle, golf car, light truck, or bus, designed or used primarily for the transportation of persons.

Tex. Transp. Code Ann. § 502.001(2), (9), (17) (West 1996). BMW asserts that, because the transportation code distinguishes between light trucks and passenger cars based on the existence of a cargo load-capacity, the Board erred as a matter of law in determining the X5 to be like a passenger

9

vehicle. Because the Board allegedly ignored its long-standing practices and misconstrued the transportation code, BMW concludes that its actions were arbitrary and capricious.

The Board responds that BMW has established neither that the Board has abandoned a long-standing policy nor that the Board has impermissibly or improperly relied on the transportation code. The Board emphasizes that BMW has been unable to cite any controlling statutory or long-standing agency practice regarding the application of line-make to a specific SUV model. The Board argues that because its licensing and franchise contract decisions are made on a case-by-case basis, there is no direct practice regarding the classification of SUVs. This is particularly so, according to the Board, because SUVs are hybrid vehicles marketed by different distributors under different line-make designations. Furthermore, the Board argues, the cited provisions of the transportation code do not dictate a finding based on cargo capacity because SUVs and minivans are considered optional vehicles under the transportation code, which can be licensed either as passenger cars or as light trucks. The Board contends that BMW mischaracterizes the record in arguing that various SUVs are *necessarily* licensed as light trucks.

We agree with the Board that BMW has not demonstrated on this record that the Board has made a legal error. First, although there is a long-standing practice of distinguishing between different types of vehicles distributed by the same manufacturer, it is not contrary to the Board's practice to place a *particular vehicle* in one category or the other. BMW has directed our attention to no portion of this record indicating a longstanding practice of treating SUVs exclusively as light trucks. Second, nothing prevents the Board from referencing parallel statutory provisions

10

in order to make its own determinations.[6]  The text of the transportation code does not require a distinction between light trucks and passenger cars based *solely* on cargo carrying capacity.  Given that the department of transportation's established practice is to regard SUVs as "optional" vehicles because they have characteristics of both passenger cars and light trucks, we cannot say that the Board erred as a matter of law in relying on the motor vehicle code in deciding which factors it will give weight to in considering in which line-make to place the X5.  Because the Board's decision did not abandon long-standing practice or improperly rely upon the transportation code, we reject BMW's arguments.

Finally, BMW argues that the Board's determination violated its due process rights because BMW was not notified before the contested-case proceeding that the Board's determination would be fact-intensive and had no notice of the dispositive factors to be considered.  *See Madden v. Texas Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 626 (Tex. App.—Austin 1983, writ ref'd n.r.e.).  BMW suggests that this lack of objective, predetermined standards prevented the Board from reaching a legally acceptable determination and allowed the Board's members to reach a conclusion based on the members' individual biases.[7]

---

[6] BMW suggests that an administrative agency may not "code shop" in order to find statutory definitions to fulfill its desired goal.  *See Paul v. Houston Police Officers' Union*, 76 S.W.3d 108, 110 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  However, in this case the Board has merely looked to another statute governing a similar administrative subject matter and there is no conflict between the motor vehicle code's language and the line-make determination made by the Board.

[7] BMW cites us to California precedent for the proposition that the California motor vehicle board process was unconstitutional because it required that the board have more dealer members than manufacturer members, allowing the dealer representatives, by design, to have potentially disproportionate influence over the board's decisions.  *See American Motors Sales Corp. v. New Motor Vehicle Bd.*, 69 Cal. App. 3d 983, 991 (1977).  That case, and other similar cases, all involve boards in which there is no required manufacturer representation.  *E.g.*, *Jaguar Cars v. Cottrell*, 896

11

In essence, BMW disagrees with the weight accorded to the various factors considered by the Board in determining that the X5 is more like a passenger car than a light truck. The record indicates that BMW had notice of the types of information that would be considered in reaching the line-make determination and had been made aware that the proceedings would be based on a scrutiny of the facts. This does not rise to the level of a due process violation. More importantly, BMW has not demonstrated on this record that its rights were prejudiced. Indeed, the Board did not punish BMW with a fine or other penalty, as it was empowered to do by the motor vehicle code, but simply made a determination that the X5 be treated as a passenger car for purposes of administering Autobahn and BMW's franchise agreement. We overrule BMW's third issue.[8]

## CONCLUSION

BMW has failed to demonstrate that the Board made a legal error in exercising its authority to make determinations regarding the scope of the motor vehicle code's provisions in administering automobile-dealer franchise agreements. To accept BMW's position that the Board

---

F. Supp. 691 (E.D. Ky. 1995). The Fifth Circuit has determined that the Board meets constitutional muster for the purpose of administering the Lemon Law. *Chrysler Corp. v. Texas Motor Vehicle Comm'n*, 755 F.2d 1192 (5th Cir. 1985). Based on this record, we do not believe that BMW has substantiated a claim that the Board is biased because of its composition.

[8] BMW additionally appeals the district court's denial of its motion to order the Board to take additional evidence or take judicial notice of that evidence. The standard of review for this determination is abuse of discretion. *Smith Motor Sales, Inc. v. Texas Motor Vehicle Comm'n*, 809 S.W.2d 268, 270 (Tex. App.—Austin 1991, writ denied). The order denying the motion reflects that the court considered the motion, the responses of the other parties, and the arguments of counsel. BMW has not demonstrated that the district court acted without reference to any guiding rule or principle, *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), and we will not disturb the district court's ruling.

prejudiced BMW's rights would require us to focus only on those aspects of the record favoring BMW's position, and not the entire administrative record taken as a whole. Accordingly, we affirm the district court's decision.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: August 14, 2003

13