# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00357-CV

**Grubbs Nissan Mid-Cities, Ltd., Appellant**

**v.**

**Nissan North America, Inc.; Brett Bray, in his Official Capacity as
Director of the Motor Vehicle Division of the Texas Department of Transportation;
and Don Davis Nissan Grapevine, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-06-001933, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Grubbs Nissan Mid-Cities, Ltd., appeals from a final order issued by Brett Bray, in his official capacity as Director of the Motor Vehicle Division of the Texas Department of Transportation, denying Grubbs's protest of Don Davis Nissan Grapevine, Inc.'s application to establish a new Nissan dealership in Grapevine, Texas. On appeal, Grubbs complains the final order was arbitrary and capricious and violates due process and equal protection because the Director (1) failed to follow agency precedent without explanation; (2) improperly placed the burden of proof on Grubbs; and (3) failed to consider and weigh all statutory factors and was not based on a rational connection between the findings and the decision. Grubbs also complains that the administrative law judge erred in denying Grubbs's motions to exclude expert testimony. Because we conclude the

Director did not act in an arbitrary and capricious manner and that his final order is supported by substantial evidence, we affirm the Director's final order.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

When Nissan North America, Inc., announced its intent to establish a new dealership in Grapevine, two competing dealers—Don Davis and Grubbs—sought the manufacturer's approval to apply for the new dealership license. *See* Tex. Occ. Code Ann. § 2301.652 (West 2004). Nissan selected Don Davis to apply for the new dealership location. Don Davis filed an application for a new motor vehicle dealer license on May 5, 2003, for a Nissan dealership to be located in Grapevine. Grubbs filed a timely protest,[2] and Nissan intervened in support of Don Davis's application. In the face of Grubbs's protest, the Director convened a hearing before an administrative law judge to determine whether there was good cause to establish a new Nissan dealership in Grapevine. *Id.* § 2301.652(a).

In the contested-case proceeding, Don Davis had the burden to show good cause for the establishment of the new Nissan dealership in Grapevine as set forth in section 2301.652(a) of the occupations code, which provides,

---

[1] The legislature abolished the Motor Vehicle Board in 2005 and replaced it with a single director of the motor vehicle division of the Texas Department of Transportation. *See* Act of May 30, 2005, 79th Leg., R.S., ch. 281, § 7.01, sec. 2301.002(2), (10), 2005 Tex. Gen. Laws 778, 839. Brett Bray currently serves as division director.

[2] A new car dealer may protest a manufacturer's decision to establish a new car dealership of the same line-make within a fifteen mile radius of the existing dealership. Tex. Occ. Code Ann. § 2301.652(b)(2) (West 2004). There was no dispute that Grubbs satisfied this statutory requirement and, therefore, had standing to protest Don Davis's application.

2

The [Director] may deny an application for a license to establish a dealership if, following a protest, the applicant fails to establish good cause for establishing the dealership. In determining good cause, the [Director] shall consider:

(1)      whether the manufacturer or distributor of the same line-make of new motor vehicle is being adequately represented as to sales and service;

(2)      whether the protesting franchised dealer representing the same line-make of new motor vehicle is in substantial compliance with the dealer's franchise to the extent that the franchise is not in conflict with this chapter;

(3)      the desirability of a competitive marketplace;

(4)      any harm to the protesting franchised dealer; and

(5)      the public interest.

*See id.* In this case, the second factor was not in dispute, but the other four factors were contested.

The ALJ conducted a fifteen-day hearing[3] and heard evidence from all parties regarding the four contested factors. Don Davis and Nissan presented evidence in the form of empirical data and expert testimony showing that the market would support a new Nissan dealership in Grapevine, and Grubbs presented evidence that it would not. Dr. Bernard L. Weinstein testified on behalf of Don Davis that, from 1990 through 2002, the Dallas/FortWorth region, which includes the City of Grapevine, has been the fastest growing metropolitan region in the country with a population growth of 34% and employment growth of almost 28%. Dr. Weinstein further testified that he expected these growth trends to continue in Grapevine, Coppell, Southlake, Westlake, Trophy Club, and other communities along the Highway 114 corridor for the foreseeable future. Nissan's

_____

[3] The hearing was conducted over ten consecutive working days, from September 27 through October 8, 2004. The hearing was recessed by agreement of the parties and reconvened for an additional five days, from November 29 through December 3, 2004.

3

expert witness, James Anderson, founder and president of Urban Science Applications, Inc. ("USAI"), testified regarding the adequacy of representation provided by existing Nissan dealers in the Grapevine area and the impact of the proposed Grapevine dealership on existing dealers. More specifically, Mr. Anderson testified that the addition of a new Nissan dealership in Grapevine would benefit consumers by increasing intrabrand competition, *i.e.*, competition between Nissan dealers.

The record reflects that, prior to the hearing, Grubbs filed motions to exclude the testimony and expert reports of Dr. Weinstein and Mr. Anderson on the grounds that their testimony was unreliable and failed to meet the admissibility standard for expert testimony established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993), and adopted by the Texas Supreme Court in *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556-57 (Tex. 1995). Although the ALJ denied Grubbs's motions, he allowed Grubbs a "running" objection to the testimony of Dr. Weinstein and Mr. Anderson throughout the contested-case hearing.

In contrast to the testimony offered by Don Davis's and Nissan's expert witnesses, Dr. Ernest H. Manuel and Dr. Marlin Ray Perryman testified on behalf of Grubbs. Dr. Manuel disagreed with the testimony of Nissan's expert, Mr. Anderson, in two respects. First, Dr. Manuel questioned the market assumptions and analysis performed by Mr. Anderson and testified that the relevant market area for this case was the entire Dallas/Fort Worth metro area as defined by Nissan in their dealer franchise agreements, as well as the 2002 Nissan audit. Second, Dr. Manuel testified that the benchmark chosen by Mr. Anderson was too high and, therefore, gave the false impression that Nissan was inadequately represented by its existing franchise dealers. Based on his economic

experience and training, Dr. Perryman also challenged Mr. Anderson's market assumptions and testified that employment losses at the nearby Dallas/Fort Worth Airport would have a detrimental effect on short-term economic growth and development in Grapevine.

In addition to this expert testimony, the ALJ heard testimony from several other witnesses. Herald Thomas Hardy, the director of Developmental Services for the City of Grapevine, and Robert Bryan Howard, president of the Don Davis Auto Group, testified on behalf of the applicant Don Davis. Nissan presented testimony from John Spoon, the regional vice-president for the Nissan south central region, and Eric K. Grubbs, president of Grubbs Mid-Cities, Ltd. Grubbs also presented testimony from David Lever, the assistant regional manager for the Nissan south central region.[4]

After the close of the contested-case hearing, the ALJ issued a proposal for decision ("PFD") finding that Don Davis had demonstrated good cause for the addition of a new Nissan dealership in Grapevine and recommending that the Director dismiss Grubbs's protest and process the application of Don Davis to completion. The parties then had an opportunity to file exceptions to the PFD. Upon review of the parties' exceptions, the Director rendered a final order adopting the PFD with few changes. In his final order, the Director adopted the ALJ's recommendation finding good cause to establish a new Nissan dealership in Grapevine and dismissed Grubbs's protest. Grubbs filed a motion for rehearing, which the Director overruled. Grubbs then sought judicial

---

[4] In addition to the live testimony presented by the parties, Grubbs also presented deposition testimony from three witnesses—William Tate, Mayor of the City of Grapevine, Ron Kutz, an employee of Group One Automotive Company, and Jeff Ruble, Dealer Operations Manager of Nissan North America—which was also considered by the ALJ.

review of the Director's final order in district court, and Don Davis removed the suit to this Court pursuant to section 2301.751(b) of the occupations code. Tex. Occ. Code Ann. § 2301.751(b) (West 2004).

## ANALYSIS

### *The Controversy*

The crux of this dispute centers on Grubbs's dissatisfaction at two levels: first, that Nissan chose Don Davis over Grubbs to be the applicant for a new car dealership in Grapevine; and second, that the Director denied Grubbs's protest of Don Davis's application. In general, Grubbs complains that the Director's final order was arbitrary and capricious and violated Grubbs's due process and equal protection rights. More specifically, Grubbs argues that the Director failed to consider all of the statutory factors when determining whether good cause existed to establish a new Nissan dealership in Grapevine, failed to follow agency precedent, rendered a decision that was not rationally connected to the findings, and improperly placed the burden of proof on Grubbs. In addition, Grubbs complains that the ALJ erred in denying Grubbs's motions to exclude expert testimony.

The Director, Don Davis and Nissan respond that there was no error in the ALJ's denial of Grubbs's motions to exclude expert testimony, the Director properly considered all required statutory factors, the final order was supported by substantial evidence, and there was no violation of Grubbs's constitutional rights.

6

***Standard of Review***

We review the Director's final order under the substantial evidence rule. *Id.* § 2301.751(a); Tex. Gov't Code Ann. § 2001.174 (West 2000); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 224 (Tex. 2002). The substantial evidence rule is a method of review designed to "'keep the courts out of the business of administering regulatory statutes enacted by the Legislature.'" *Board of Regents v. Martine*, 607 S.W.2d 638, 641 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) (quoting *Lewis v. Metropolitan Savs. & Loan Ass'n*, 550 S.W.2d 11, 13 (Tex. 1977)). Notwithstanding this deferential standard of review, "'it remains the business of the courts to see that justice is administered to competing parties by governmental agencies.'" *Id.*

Under substantial evidence review, we presume the Board's order is supported by substantial evidence, and the appellant has the burden of overcoming this presumption. *Graff Chevrolet Co., Inc. v. Texas Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied). When a court reviews an agency decision under the substantial evidence rule, the issue for the reviewing court is not whether the agency's decision was correct, but whether the record demonstrates some reasonable basis for the agency's action. *Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied). We may not substitute our judgment for that of the agency on matters committed to agency discretion. Tex. Gov't Code Ann. § 2001.174; *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied). The agency is the sole judge of the weight of the evidence and the credibility of the witnesses. *Central Power & Light*, 36 S.W.3d at 561.

We review the ALJ's decision to admit or exclude evidence for abuse of discretion—the same standard we apply to trial courts. *City of Amarillo v. Railroad Comm'n*, 894 S.W.2d 491, 495 (Tex. App.—Austin 1995, writ denied). An agency has broad discretion when deciding whether to admit expert testimony in an administrative hearing, and its decision will not be disturbed absent an abuse of discretion. *Fay-Ray Corp. v. Texas Alcoholic Bev. Comm'n*, 959 S.W.2d 362, 367 (Tex. App.—Austin 1998, no pet.).

***Determination of Good Cause***

The single relevant issue in a protest proceeding is "good cause." Tex. Occ. Code Ann. § 2301.652(a); *Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 306 (Tex. App.—Austin 1999, pet. denied). The burden of proving good cause to establish the new dealership is on the applicant—in this case Don Davis. *See* Tex. Occ. Code Ann. § 2301.652(a). In determining whether good cause exists, the statute requires the Director to consider five factors: (1) whether the manufacturer is adequately represented as to sales and service; (2) whether the protesting dealer is in substantial compliance with its franchise agreement;[5] (3) the desirability of a competitive marketplace; (4) any harm to the protesting dealer; and (5) the public interest. *Id.* § 2301.652(a)(1)-(5). Although the Director must consider all five factors, the statute does not place any emphasis on one factor over another. *Id.* Because the legislature has given the Director exclusive jurisdiction to determine the issue of good cause, the question of how best to resolve the issue, including the weight to be given each statutory factor, is a matter committed to the Director's

---

[5] There is no dispute that Grubbs was in substantial compliance with its franchise agreement. Therefore, we will limit our discussion accordingly.

discretion. *Austin Chevrolet, Inc. v. Motor Vehicle Bd.*, 212 S.W.3d 425, 432 (Tex. App.—Austin 2006, pet. denied). This Court has previously recognized that we may not substitute our judgment for that of the Director on the weight to be given each of the required statutory factors. *See Meier Infinity Co. v. Motor Vehicle Bd.*, 918 S.W.2d 95, 100 (Tex. App.—Austin 1996, writ denied).

***Failure to Follow Agency Precedent***

In Grubbs's first issue on appeal, Grubbs argues that the final order is arbitrary and capricious and violates due process and equal protection because the Director failed to follow agency precedent. At the core of Grubbs's complaints is the notion that the Director has departed from prior agency decisions regarding adequate representation, harm, competition, and public interest. Relying on this Court's decision in *Austin Chevrolet*, Grubbs argues that the Director acted arbitrarily and capriciously when he failed to follow agency precedent by rejecting the lack of untapped market potential—or lost opportunity available to the applicant—as grounds for denying Grubbs's protest. We disagree.

As this Court recognized in *Austin Chevrolet*, "'an agency is not bound to follow its decisions in contested cases in the same way that a court is bound by precedent.'" 212 S.W.3d at 438 (quoting *Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 533-34 (Tex. App.—Austin 2003, pet. denied)). Rather, an agency need only "explain its reasoning when it 'appears to the reviewing court that an agency has departed from its earlier administrative policy or there exists an apparent inconsistency in agency determinations.'" *Id.* (quoting *Flores*, 74 S.W.3d at 544-45).

Relying on this Court's opinion in *Austin Chevrolet*, Grubbs urges that the Director's decision fails to follow agency precedent. But Grubbs's reliance is misplaced. Although Grubbs

9

is correct that in both cases the agency found that the record failed to demonstrate that the manufacturer was inadequately represented, that is where the factual similarity ends. In *Austin Chevrolet*, the Board found that the level of opportunity was so low in the Houston market at the time of the initial protest in 1993 that adding another Chevrolet dealership to the market would lead to "cannibalization of [the new dealer's] closest intrabrand competitors in order to merely survive." 212 S.W.3d at 433. Moreover, the record in *Austin Chevrolet* showed that the protesting dealer already suffered from low profitability and the addition of another dealer only ten miles away "would have decreased [the protesting dealer's] low profitability across all departments, and caused it and other dealerships in the market to change their operations in a way that would have resulted in poorer service to the public." *Id.*

The evidence presented in *Austin Chevrolet* revealed that the Houston market in 1993 was suffering from an extended decline and that the state of the Houston economy was "sluggish and stagnant." *Id.* at 434. Dr. Perryman testified in *Austin Chevrolet* that the overriding climate in the Houston area during this period was one of "unemployment and job insecurity." *Id.* Dr. Perryman's expert report further concluded that the market was characterized by "a decade of sluggishness, a declining trend in new automobile sales, stagnant wages, substantial layoffs, and only modest growth projections." *Id.* The protesting dealer in *Austin Chevrolet* also presented evidence that its new car retail sales would decline 15% to 30% if the agency granted the application at issue. *Id.* Given the struggling financial condition of the protesting dealer and the stagnant condition of the Houston market in 1993, the Board concluded that good cause did not exist to add a new Chevrolet dealer at the time. *Id.* The Board noted, however, that had the protesting dealer been in

10

a flourishing market, the Board would have expected the dealer to adjust its business strategy to capture untapped opportunity. *Id.*

The evidence in *Austin Chevrolet* stands in stark contrast to the evidence presented in this case. Here, the Director found that the potential for future growth in the Grapevine market was more than sufficient to sustain a new Nissan dealership. Both Dr. Perryman, who testified on behalf of Grubbs, and Mr. Anderson, who testified on behalf of Nissan, agreed that the economic future for the Tarrant County area, including Grapevine, was very optimistic. For example, Dr. Perryman projected a Fort-Worth-Arlington population increase of more than 150,000 by 2007 and a job increase of approximately 70,000. Dr. Perryman agreed with Mr. Anderson that while automotive retail sales go through up and down fluctuations, he expected 2004 to be the start of an "up" period. Additionally, Dr. Perryman testified that he expected the retail automotive market to grow more rapidly in Texas than in the United States, and more rapidly in Dallas/Fort Worth than in Texas statewide. Their expert testimony was further supported by Grubbs's own actions in applying for the new Nissan dealership in Grapevine and proposing to build a facility that was as large as its existing facility in Bedford, and four times the size Nissan was requiring for the new dealership. In addition, Eric Grubbs testified on cross-examination that it was acceptable for Grubbs to get the new dealership, but it was not acceptable for anyone else:

> Q (by Don Davis's counsel): Do I correctly understand, sir, that from your earlier testimony with Mr. Krakow, that it would be okay for you to have a dealership for Nissan in Grapevine but not for anyone else?
>
> A: I think that would be true. I don't think I would protest myself.

Thus, the evidence showed that Grubbs recognized the economic growth potential for a new dealership in Grapevine.

Another important distinction between this case and *Austin Chevrolet* is that Grubbs, unlike the protesting dealer in *Austin Chevrolet*, was financially healthy. In 2003, although described as an "off-year" by Grubbs's expert, Grubbs's net profit was $197,704, after payment of salaries, rent and other compensation to members of the Grubbs family. In 2004, Grubbs's competitive performance improved, and its annualized net profit, based on the first six months of the year, was projected to be more than $800,000. Given the flourishing market conditions in Tarrant County, the Director could have reasonably expected Grubbs to continue to adjust its business strategy to capture the benefits of projected economic growth. *See id.*

Notwithstanding Grubbs's allegations, we hold that the Director's decision in this case is consistent with, not contrary to, agency precedent. As the Director explained in the order denying Grubbs's motion for rehearing, Grubbs's reliance on a number of prior agency decisions is misplaced because those decisions were made regarding "specific proposals at specific geographic points in specific markets at specific times." In contrast, "[t]he ALJ's reasoning [in this case was] that the public interest in a vigorous competitive marketplace along with the scope and long term viability of the Grapevine-area market outweigh[ed] the minimal harm that may or may not ensue." Stated differently, the Director iterated that each case must be decided on the facts and evidence presented therein. This is consistent with this Court's holding in *Austin Chevrolet* in which we recognized that "[t]he standard employed by the [Director] varies based on the facts and circumstances in each case." *Id.* at 435. Based on the evidence presented during the hearing process

12

regarding the facts and circumstances of this case, we conclude that the Director properly determined that Don Davis met its burden to demonstrate good cause to establish a new dealership in Grapevine.

In further support of its claim that the Director failed to follow agency precedent, Grubbs argues that in light of the Director's finding regarding adequacy of representation, the Director was compelled to find in favor of the protestant on the remaining statutory factors of harm, desirability of a competitive marketplace, and the public interest. In other words, according to Grubbs, once the Director finds that the manufacturer is adequately represented, the remaining statutory factors are irrelevant and compel the Director to grant the protest and deny the application for a new dealership license.

We reject Grubbs's theory because it reads the other four factors out of the statute. As this Court held in *Meier Infinity*, the Director, not the protesting dealer, "is responsible for determining which factors to consider, how much weight each factor should receive, and whether in light of these factors there is 'good cause' for licensing a new dealership." 918 S.W.2d at 100. We may not substitute our judgment for that of the Director on which factors are considered to be the most important, nor may we conduct a *de novo* review of the Director's "good cause" determination. *See id.* We conclude that the Director's decision does not depart from agency precedent and that the final order is supported by substantial evidence. We overrule Grubbs's first issue on appeal.

***Burden of Proof***

In its second issue on appeal, Grubbs contends that the Director improperly shifted the burden of proof to the protesting dealer. Grubbs bases its complaint upon a single sentence in

13

the PFD, which states "[t]here is accordingly enough evidence in this case to support either the outcome sought by Don Davis and Nissan or the outcome sought by Grubbs," and finding of fact 45, which states "[a] preponderance of evidence fails to justify a finding that Grubbs would be materially harmed by the proposed Grapevine dealership."

### 1.    Statement in PFD

With regard to the statement in the opening of the PFD that there is enough evidence to support either the outcome sought by Don Davis and Nissan or the outcome sought by Grubbs, the ALJ was not, as Grubbs suggests, commenting on the burden of proof or the weight of the evidence. Instead, the ALJ was simply commenting on the sheer volume of evidence in the record of this proceeding. Nowhere in the statement highlighted by Grubbs does the ALJ mention the weight or credibility to be given such evidence. Nor does the statement express that the ALJ was somehow shifting the burden of proof from the applicant to Grubbs. Accordingly, we conclude that Grubbs simply reads this statement out of context and gives it undue weight.

### 2.    Finding of Fact 45

In further support of its claim that the Director improperly shifted the burden of proof, Grubbs points to finding of fact 45. Based on this finding, Grubbs argues that the Director improperly shifted the applicant's burden of proof on the issue of harm to Grubbs. But Grubbs's argument ignores the statutory framework in section 2301.652.

The statute requires the applicant for a new dealership license to demonstrate good cause for establishing the dealership. *See* Tex. Occ. Code Ann. § 2301.652(a). Although the statute

14

requires the Director to consider "*any* harm to the protesting franchised dealer" when determining whether the applicant has demonstrated good cause, the statute does not require the applicant to demonstrate a complete lack of harm to the protesting dealer.[6] *See id.* § 2301.652(a)(4) (emphasis added). The legislature's use of the word "any" in section 2301.652(a)(4) contemplates that there may be some harm, and the statute simply requires the Director to consider the extent and effects of any harm when making a good cause determination. We believe that is precisely what the Director has done in this case.

Finding of fact 45 states only that there is not a preponderance of evidence "to justify a finding that Grubbs would be materially harmed by the proposed Grapevine dealership." There is nothing in the plain language of this finding that demonstrates a shift in the burden of proof. As the Director explained, he understood this finding "to mean that, as one of five elements listed in the relevant [c]ode section, the [a]pplicant did prove a lack of notable harm to the [p]rotestant and [p]rotestant did not successfully rebut same." We agree. Because the level of harm will vary depending on the circumstances in each case and is merely one of five factors to be taken into account when determining good cause, we conclude that the Director acted within his discretion in

---

[6] In support of its contention that Don Davis was required to demonstrate a lack of harm to Grubbs as the protesting dealer, Grubbs relies on this Court's statement in *Austin Chevrolet, Inc. v. Motor Vehicle Board*, 212 S.W.3d 425, 432-33 (Tex. App.—Austin 2006, pet. denied), which provided that "[i]n demonstrating good cause for the establishment of a new dealership, [the applicant] w[as] required to show that the [new] dealership would not 'harm' the protesting franchised dealer." Grubbs's reliance on this statement is misplaced. Because the applicant need only demonstrate good cause to establish a new dealership, *see* Tex. Occ. Code Ann. § 2301.652(a) (West 2004), this statement overstates the applicant's burden of proof under the statute. Thus, we reject Grubbs's contention that Don Davis was required to demonstrate a total lack of harm to Grubbs in order to demonstrate good cause within the statutory framework.

considering the evidence of harm within the overall determination of good cause in this case. Accordingly, we hold that the Director did not improperly shift the burden of proof to Grubbs, and we overrule Grubbs's second issue on appeal.

### *Failure to Consider Required Statutory Factors*

In its third issue on appeal, Grubbs argues that the Director failed to consider and weigh all of the required statutory factors and that the Director's decision is not based on a rational connection between the findings and the decision. The record does not support Grubbs's claims.

Instead, the record reflects that the ALJ considered all of the required statutory factors in his proposal for decision and recommended that the Director find "good cause" to grant the application and deny Grubbs's protest. With minor changes, the Director adopted the PFD, including the ALJ's discussion and findings on each of the required statutory factors and the ALJ's "good cause" recommendation. This Court has previously held that the Director need not make findings on issues that the Director did not find persuasive or on which he did not rely for support of his ultimate determination. *See Meier Infinity*, 918 S.W.2d at 99 (citing *State Banking Bd. v. Valley Nat'l Bank*, 604 S.W.2d 415, 419 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.)).

The statute only requires an ultimate finding on good cause. To the extent Grubbs argues that the Director was required to make specific findings of fact as to each of the statutory factors in section 2301.652(a), this Court rejected the same argument in *Meier Infinity*, 918 S.W.2d at 100. Like the protesting dealer in *Meier Infinity*, Grubbs relies on *City of El Paso v. Public Utility Commission of Texas*, 883 S.W.2d 179, 184 (Tex. 1994). As this Court explained, however, *City of El Paso* merely requires an agency to consider all of the statutory criteria; it does not stand for

16

the proposition that the Director must make ultimate findings as to each of the statutory factors. *See Meier Infinity*, 918 S.W.2d at 100. Stated differently, an agency's final order must reflect that the agency considered the statutory factors, and its underlying findings must be stated in such a way that a reviewing court can reasonably evaluate whether the underlying findings support the statutory criteria. *Id.* (citing *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 451 (Tex. 1984)). In this case, the underlying findings must reflect that the Director considered adequacy of representation, the desirability of a competitive marketplace, harm to the protesting dealer, and the public interest.[7] We believe that the underlying facts as found by the ALJ and adopted by the Director demonstrate that the Director properly considered each of these statutory criteria.

For similar reasons, we also reject Grubbs's contention that the Director's final order violates section 2301.711(a)(1) of the occupations code because it does not contain a specific finding regarding Grubbs's compliance with its franchise dealer agreement. *See* Tex. Occ. Code Ann. § 2301.711(a)(1) (West 2004). In a similar context, the supreme court held that a final order of the Public Utility Commission reflected the agency's consideration of the statutory criteria even though the order lacked a specific finding couched in the language of the statute. *See Goeke v. Houston Lighting & Power*, 797 S.W.2d 12, 14 (Tex. 1990). Upon reviewing the entire order to determine whether the agency considered the statutory factors, the court observed that the agency need not make "ultimate findings" on each factor. *Id.*; *see also Meier Infinity*, 918 S.W.2d at 99 (findings are

---

[7] The franchise compliance factor was undisputed. To the extent Grubbs argues that a specific finding on franchise compliance was required, we address that issue below.

17

not required on matters agency does not find persuasive or does not rely upon to support its ultimate decision). In this case, the textual discussion of the PFD reflects that the ALJ considered the franchise compliance factor and concluded that it was not in dispute. The Director adopted the PFD with no changes to the textual discussion. Therefore, even though the final order does not include a specific finding with respect to Grubbs's franchise compliance, we conclude there was no violation of section 2301.711(a)(1) because the final order reflects that the Director properly considered and weighed all of the required statutory factors. Were we to find a violation of section 2301.711, we would not be obligated to reverse the Director's order unless Grubbs demonstrated prejudice to its substantial rights as a result of the alleged violation. *See* Tex. Gov't Code Ann. § 2001.174(2) (West 2000). Given that it was undisputed that Grubbs was in compliance with its franchise agreement, and Grubbs does not argue on appeal that its substantial rights were prejudiced by the lack of a specific finding on franchise compliance in the Director's final order, we overrule Grubbs's complaint.

To the extent Grubbs raises additional challenges to specific findings in the Director's final order, we reject those challenges because Grubbs has failed to demonstrate that the final order is not supported by substantial evidence. Essentially, Grubbs complains that the evidence does not support the challenged findings.[8] But even if the evidence preponderates against the Director's decision, we may not substitute our judgment for that of the Director on questions committed to the

---

[8] We note that Grubbs neither argues nor demonstrates prejudice to its substantial rights with regard to its challenges to these specific findings. In the absence of any prejudice to Grubbs's substantial rights, we may not reverse the Director's final order. *See* Tex. Gov't Code Ann. § 2001.174 (West 2000).

Director's discretion. *See Charter Med.*, 665 S.W.2d at 452-53; *Austin Chevrolet*, 212 S.W.3d at 431. So long as the evidence is such that reasonable minds could have reached the conclusion reached by the agency, a reviewing court must uphold the agency's final order. *Charter Med.*, 665 S.W.2d at 452-53; *see also Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983). Having reviewed the record, we conclude that the evidence demonstrates a reasonable basis for the action taken by the Director, *see Charter Med.*, 665 S.W.2d at 452, and we reject Grubbs's contention that there is no rational connection between the findings and the Director's decision. We overrule Grubbs's third issue on appeal.

### *Evidentiary Rulings*

In its fourth issue on appeal, Grubbs complains that the ALJ improperly denied its motions to exclude expert testimony offered by Don Davis's expert, Dr. Weinstein, and Nissan's expert, Mr. Anderson.[9] Arguing that Mr. Anderson's entire testimony was unreliable and should have been excluded, Grubbs seizes upon the following statements in the PFD: "The credibility of USAI's study unravels on this theory of imbedded inadequacy," and "the reliability of this standard [proposed by Mr. Anderson] is further undercut . . . ."[10] Although there is no similar statement in

---

[9] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993).

[10] These statements are included in that portion of the PFD discussing Mr. Anderson's theory that, based on the market studies conducted by USAI, Nissan was, as a general rule, under-represented in almost all Texas markets. Thus, according to Mr. Anderson, it was appropriate to use the highest market penetration standard when evaluating the adequacy of Nissan's representation in the Grapevine market. As explained in the PFD, however, the ALJ rejected what he called Mr. Anderson's "theory of embedded inadequacy."

19

the PFD regarding Dr. Weinstein's testimony, Grubbs argues that his testimony was likewise unreliable and should have been excluded.

We review the agency's rulings on the admissibility of evidence under the abuse of discretion standard we apply to trial courts. *City of Amarillo*, 894 S.W.2d at 495. Although Grubbs is correct that the rules of evidence apply in administrative hearings, the standard for admissibility of evidence is broader for administrative proceedings than it is in the trial court. *See* Tex. Gov't Code Ann. § 2001.081 (West 2000) (allowing admissibility of otherwise inadmissible evidence if (1) necessary to ascertain facts not reasonably susceptible to proof under the rules of evidence; (2) not precluded by statute; and (3) of a type reasonably relied upon by a prudent person). The agency has broad discretion in deciding whether to admit expert testimony in an administrative hearing, and its decision will not be overturned on appeal absent an abuse of discretion. *Id.*; *Fay-Ray Corp.*, 959 S.W.2d at 367.

As this Court explained in *Austin Chevrolet*, the legislature has given the Director "exclusive jurisdiction to determine the issue of good cause, based on its expertise and experience in making this determination." 212 S.W.3d at 432. Thus, as a matter of law, the Director was "uniquely and exclusively qualified to make that determination," and "[t]he question of how best to resolve the issue was a matter for the [Director's] discretion." *See id.*

The Texas Rules of Evidence authorize the admission of expert testimony where it will assist the trier of fact in understanding the evidence or in determining a fact issue. Tex. R. Evid. 702; *see Story Servs., Inc. v. Ramirez*, 863 S.W.2d 491, 499 (Tex. App.—El Paso 1993, writ denied). In addition, it is well established that the agency is the sole judge of the weight to be accorded the

20

testimony of each witness. *Central Power & Light*, 36 S.W.3d at 561. When weighing the evidence, the agency may accept or reject the testimony of witnesses or may accept part of a witness's testimony and disregard the remainder. *Id.*

The record in this case demonstrates the ALJ accepted some portions of Mr. Anderson's testimony and rejected others. Likewise, the record shows the ALJ accepted some portions of Dr. Weinstein's testimony and rejected others. To the extent the PFD makes reference to those portions of Mr. Anderson's testimony that the ALJ found unreliable or lacking in credibility, we conclude that the ALJ was simply pointing out those portions of the testimony that he rejected. Accordingly, we hold there was no abuse of discretion in the ALJ's denial of Grubbs's motions to exclude expert testimony. We overrule Grubbs's fourth issue.

### Due Process/Equal Protection

Subsumed within various issues raised by Grubbs on appeal is the argument that the Director's decision violates Grubbs's due process and equal protection rights. *See* U.S. Const. amend. XIV, § 1 (equal protection, due process); Tex. Const. art. I, §§ 3, 19 (equal protection, due process). In administrative proceedings, due process requires that parties be afforded a full and fair hearing on disputed fact issues. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 576 (Tex. App.—Austin 2006, pet. denied). At a minimum, due process requires that the "rudiments of fair play" be observed. *Id.*; *see also State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984). Equal protection simply requires that administrative agencies treat similarly situated parties the same. *BMW of N. Am. v. Motor Vehicle Bd.*, 115 S.W.3d 722, 726 (Tex. App.—Austin 2003, pet. denied).

The record in this case reflects that the agency held a fifteen-day contested case hearing in which Grubbs was permitted to present testimony on all disputed fact issues. The record further reflects that the Director's final order comports with agency precedent. Moreover, despite Grubbs's allegations to the contrary, we have previously concluded that there were significant factual differences between Grubbs and the protesting dealer in *Austin Chevrolet*; thus, Grubbs cannot show that it was a similarly situated party. Accordingly, we conclude that Grubbs has failed to demonstrate either a due process or equal protection violation.

## CONCLUSION

Because we find that the Director did not act in an arbitrary and capricious manner and that his order is supported by substantial evidence, we affirm the Director's final order.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: May 23, 2007